## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWITZ-LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 11 CV 1826 |
| | ) | |
| KEVIN C. DOYLE, MICHAEL W. DOYLE., | ) | The Honorable Judge Philip G. Reinhard |
| PAMELA DOYLE, JOHN T DOYLE | ) | |
| TRUST A, JOHN T. DOYLE TRUST B, | ) | Magistrate Judge P. Michael Mahoney |
| and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER TO PLAINTIFF'S COMPLAINT

Defendants, Kevin C. Doyle, Michael W. Doyle, Pamela Doyle, the John T. Doyle Trust A, and the John T. Doyle Trust B, by their attorneys, for their Answer to the Complaint of Plaintiff, Christian K. Narkiewitz-Laine, state as follows:

1. This action arises from the unauthorized and illegal removal of almost the entire contents of a leased space in Galena, Illinois, rented from the Doyle defendants by plaintiff Narkiewitz-Laine, which contents included literally dozens of exhibited and valuable works of art, now totally destroyed.

**ANSWER:**    Denied.

2. Although Narkiewicz-Laine had leased the premises since early 2004 and had been remitting the agreed-upon rent for six years, in July 2010, without notice to Narkiewicz-Laine and without following any of the legal requirements for eviction under Illinois law, defendants "evicted" him and removed virtually all of his property from the leased premises, withholding a few items for themselves and causing the rest to be destroyed in a landfill.

**ANSWER:**    Defendants admit only that Plaintiff began leasing the premises in early 2004. The remaining allegations of paragraph 2 are denied.

3.      Among the many items stored by Narkiewicz-Laine in the premises and now destroyed were over 20 years of his life's work as a painter, sculptor, photographer, architect, designer and poet, as well as most of the records of his work, the equipment used to create new works of art, and certain other valuable property owned either by Narkiewicz-Laine or by others and consigned to Narkiewicz-Laine for safekeeping.

**ANSWER:**      Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 3, and therefore deny the same.

4.      Plaintiffs bring this action for violation of the right of integrity under the Visual Artists Rights Act, 17 U.S.C. § 106A; common law conversion; and violation of various provisions of the Illinois' Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et seq.*

**ANSWER:**      Defendants admit only that Plaintiff makes such claims as set forth in paragraph 4. Defendants deny that Plaintiff meets the criteria to prevail on any of his claims, and deny the remaining allegations in paragraph 4, and any negative inferences thereof.

5.      Plaintiff Narkiewicz-Laine is an architect, painter, and sculptor. Since 1988, he has also been the President and Director of The Chicago Athenaeum: The Center for Architecture and Urban Studies, a.k.a. The Chicago Athenaeum ("The Chicago Athenaeum" or "the Museum"). Since 2007, he has also been the Director and CEO of The European Centre for Architecture Art Design and Urban Studies based in Dublin, Ireland and Athens, Greece. Narkiewicz-Laine is, and was during the events alleged herein, a citizen of the United States, maintaining residences in Galena and Chicago, as well as a residence in Naxos, Greece.

**ANSWER:**      Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 5, and therefore deny the same.

6.      Defendant Kevin C. Doyle, a son of John T. Doyle, resides at 1130 Ferry Landing Road,

Galena, Illinois and is a co-trustee of the John T. Doyle Trust A and of the John T. Doyle Trust B.

**ANSWER:**   Admitted.

7.      Upon information and belief, defendant Michael W. Doyle, also a son of John T. Doyle, resides at 201 S. High Street, Galena, Illinois and is employed at the Galena, Illinois office of the Homestead Appraisal Limited, a real estate brokerage. He is also a co-trustee of the John T. Doyle Trust A and of the John T. Doyle Trust B.

**ANSWER:**   Defendants admit only that Michael W. Doyle is a son of John T. Doyle, that he resides at 201 S. High Street in Galena, Illinois, and that he is a co-trustee of the John T. Doyle Trust A and the John T. Doyle Trust B. The remaining allegations in paragraph 7 are denied.

8.      Pamela Doyle is the wife of defendant Kevin C. Doyle and, upon information and belief, also resides at 1130 Ferry Landing Road, Galena, Illinois. She is the Portfolio Manager at the Galena State Bank and Trust Co., Galena.

**ANSWER:**   Admitted.

9.      Upon information and belief, defendant the John T. Doyle Trust A is a marital trust, established under a Trust Agreement executed by grantor John T. Doyle on December 20, 1994.

**ANSWER:**   Admitted.

10.     Upon information and belief, defendant the John T. Doyle Trust B is a residuary trust, established under a Trust Agreement executed by grantor John T. Doyle on December 20, 1994.

**ANSWER:**   Admitted.

11.     John Does 1-50, upon information and belief, are individuals and/or entities, presently unnamed but who may be named as additional defendants to one or more claims for relief as a result of discovery.

**ANSWER:**   Defendants lack the knowledge and information sufficient to form a belief as to the

truth of the allegations in paragraph 11, and therefore deny the same.

12.     This action arises, *inter alia,* under 17 U.S.C. § 101, *et seq.,* for violation of plaintiff Narkiewicz-Laine's right of integrity in his Works of Visual Art pursuant to 17 U.S.C. § 106A. This court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

**ANSWER:**     Defendants admit only that Plaintiff asserts claims under the statutes set forth in paragraph 12, and that the court has jurisdiction over this action. Defendants deny that Plaintiff meets the criteria to prevail on any of his claims, deny that he has or ever had any Works of Visual Art or a right of integrity in any Works of Visual Art, and deny the remaining allegations in paragraph 12, and any negative inferences thereof.

13.     This Court has supplemental jurisdiction over the state statutory and common law claims pursuant to 28 U.S.C. § 1367(a), as they are related to the federal claims and form part of the same case or controversy.

**ANSWER:**     Admitted.

14.     Venue is proper in this district under and pursuant to 28 U.S.C. § 1391(b), as defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred here.

**ANSWER:**     Admitted.

15.     Narkiewicz-Laine is an accomplished architect, painter, photographer, writer, critic and poet who has published extensively on architecture and design and has exhibited his own works of art widely since at least 1980. He has been the President and Director of The Chicago Athenaeum since 1988.

**ANSWER:**     Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 15, and therefore deny the same.

16.     The Chicago Athenaeum is an international museum of architecture and design, founded in 1988. It is a not-for-profit 501(c)(3) cultural institution with its principal place of business located at The Historic Fulton Brewery Building, 601 South Prospect Street, Galena, Illinois. It also maintains offices and operations in Chicago and Schaumberg, Illinois; Dublin, Ireland; Florence, Italy; and Athens, Greece.

**ANSWER:**     Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 16, and therefore deny the same.

17.     The mission of the Museum is to promote good architecture, design and urban planning through public programs, exhibitions, and sponsorship of awards. In 2001, the Museum moved its administrative headquarters from Chicago to the Historic Fulton Brewery Building at 601 South Prospect Street, Galena, Illinois, pending the lease of new premises in Chicago.

**ANSWER:**     Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 17, and therefore deny the same.

18.     At or around that time, Narkiewicz-Laine purchased a personal residence in Galena. He also sought storage and working space for his extensive personal property, primarily the paintings, sculpture, drawings, photographs, prints, architectural renderings, and poetry he had created over his life-time and new works, works in progress and associated materials such as his art reference library, his records, and his equipment.

**ANSWER:**     Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 18, and therefore deny the same.

19.     In early 2004, Narkiewicz-Laine entered into an oral lease with the Doyle family to rent storage and work space in a building the latter owned or controlled at 125 South Main Street, Galena, Illinois (the "Property"). The rented space (the "Premises") was situated on the second

floor of a two-story brick building in proximity to the then location of the Museum.

**ANSWER:** Defendants admit only that Plaintiff entered into an oral lease with the John T. Doyle Trust to rent storage space in a building that it owned at 125 South Main Street, Galena, Illinois, which was situated on the second floor of a two-story brick building. Defendants lack the knowledge and information sufficient to form a form a belief as to the truth of the allegation regarding the proximity of the Property to the "then location of the Museum," and therefore denies the same. All remaining allegations in paragraph 19 are denied.

20. The Doyles and Narkiewicz-Laine orally agreed that rent for the Premises would be $50 per month and that Mr. Narkiewicz-Laine would be responsible for payment of utilities in the Premises (the "Lease Agreement").

**ANSWER:** The Defendants admit only that Plaintiff and the John T. Doyle Trust orally agreed that rent for the Premises would be $50 per month and that Plaintiff would be responsible for payment of utilities in the Premises. All remaining allegations in paragraph 20 are denied.

21. After they reached that Lease Agreement and pursuant thereto, Narkiewicz-Laine moved certain personal property into the Premises, supplementing it from time to time over the years with additional materials, including new works of art that he created, older works created by him that he retrieved from exhibitions around the world or other locations, art supplies and tools that he purchased, personal records, and artwork and other artifacts consigned to his safekeeping by third parties, including the Museum. These materials remained in the Premises until 2010, when they were removed without authority by defendants.

**ANSWER:** Defendants admit only that Plaintiff placed certain property into the Premises, and that Defendants removed certain materials from the Premises in 2010. Defendants deny that they engaged in any act "without authority." Defendants lack the knowledge and information sufficient

to form a belief as to the truth of the remaining allegations in paragraph 21, and therefore deny the same.

22.     For the period of Narkiewicz-Laine's lease on the Premises, the only persons with keys to the Premises (other than one or more of defendants in their capacity of landlord) were Narkiewicz-Laine and the Director of Administration of the Museum, Lary L. Sommers ("Sommers").

**ANSWER:**     Defendants admit only that they had keys to the Premises. Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22, and therefore deny the same.

23.     From February 2004 until February 2006, Narkiewicz-Laine paid the rent on the Premises monthly by check. At the Doyles' instruction, checks were made payable to "John Doyle Trust" and either mailed to, or deposited by hand at, Galena State Bank & Trust in Galena.

**ANSWER:**     Admitted.

24.     The monthly utilities bill from NICOR and Alliant Energy was addressed to, and paid by, Narkiewicz-Laine and the Museum on Narkiewicz-Laine's behalf, for the entire period of the Lease Agreement.

**ANSWER:**     Denied.

25.     In 2006, because Mr. Narkiewicz-Laine had begun traveling more frequently abroad and for longer periods in connection with his work including on Museum business, he began paying several months' rent at a time, sometimes in advance, sometimes after the due date. For example, on December 16, 2006, Narkiewicz-Laine paid a check for $250 to cover rent for the last five months of 2006; in 2007, he paid $100 on January 28 for January and February, $300 on July 13 for March through August, and $200 on September 7 for the balance of the year. Increasingly, Narkiewicz-Laine's professional duties obliged

him to travel for several months at a time. Therefore, in 2008, he tendered a single check on July 1 for $600 in full payment for the calendar year.

**ANSWER:** Defendants admit only that: (i) Plaintiff tendered a check in December of 2006 for $250, that paid the past due rent for the last five months of 2006; (ii) in 2007, Plaintiff paid $100 that covered rent for January and February, $300 in July for the past due rent from March through July, and covered rent for August, and $200 in September that covered rent for the remainder of 2007; and (iii) in 2008, Plaintiff tendered a single check in July for $600 which paid rent for the entire year. Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 25, and therefore deny the same.

26.     At no time did any of the defendants inform Narkiewicz-Laine that he or she or it objected to the timing of the rent payments under the Lease Agreement. Every check up to and including the check dated July 1, 2008, was accepted, cashed, and cleared through the account of the John Doyle Trust.

**ANSWER:** Defendants admit only that every check up to and including the check dated July 1, 2008, was accepted, cashed, and cleared through the account of the John Doyle Trust. The remaining allegations of paragraph 26 are denied.

27.     On September 8, 2009, Narkiewicz-Laine mailed a check to the Galena State Bank and Trust in Galena from Greece in the amount of $600, constituting payment of rent in full for the calendar year 2009. Upon information and belief and as later discovered by Narkiewicz-Laine, this check did not clear the account of the John Doyle Trust. Mr. Narkiewicz-Laine never received any notification from defendants that they had not received the 2009 rent payment or any other complaint or demand for rent for the Premises.

**ANSWER:** Defendants admit only that they never received any amount of rent payment for any of the months of 2009, and that Plaintiff never paid such rent or addressed this breach of the terms

of the oral lease. Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27, and therefore deny the same.

28.     Narkiewicz-Laine was in the Premises in January 2010, at which time his possessions and property appeared intact. After that January visit, Mr. Narkiewicz-Laine went abroad, where he remained for the first half of 2010.

**ANSWER:**     Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 28, and therefore deny the same.

29.     On or about June 20, 2010, Narkiewicz-Laine returned to Galena and shortly thereafter, in accordance with his past practice, on or about July 19, 2010, wrote a check for $600 annotated "Jan-Dec 2010 Main St. Rent," in full payment for the rent for the Premises for the calendar year 2010. Narkiewicz-Laine hand-delivered this check to the Galena State Bank and Trust the next day. That check cleared through the John Doyle Trust account on July 22, 2010.

**ANSWER:**     Defendants admit only that a check in the amount of $600 was deposited into the account of the John Doyle Trust on or about July 22, 2010. Defendants deny that such payment was rent for the Premises for the calendar year 2010. Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations of paragraph 29, and therefore deny the same.

30.     Upon information and belief, in or around January 2010, defendants decided to sell the Property and began showing it to prospective buyers.

**ANSWER:**     Admitted.

31.     At that time, defendants knew of, and were bound by, the terms of the Lease Agreement, which was in full force and effect.

**ANSWER:**     Denied.

32.     Defendants did not inform Narkiewicz-Laine of their intention to sell the Property, nor that they were showing it to prospective buyers.

**ANSWER:**     Admitted.

33.     Upon information and belief, at some time after January, 2010 and before July 23, 2010, defendants Kevin Doyle and Michael Doyle, on behalf of defendants the John T. Doyle Trust A and the John T. Doyle Trust B, sold the Property to John C. Andresen and Donna T. Andresen, who maintained a store on the ground floor of that Property, below the Premises.

**ANSWER:**     Admitted.

34.     At no time prior to July 21, 2010, did defendants or any of them advise Narkiewicz-Laine of this impending sale of the Property.

**ANSWER:**     Admitted.

35.     Defendants at no time notified Narkiewicz-Laine that they were terminating the Lease Agreement, nor did they request that he remove his property from the Premises.

**ANSWER:**     Defendants admit only that they did not notify Plaintiff that they were terminating the Lease Agreement, and that they did not request Plaintiff to remove any property from the Premises. Defendants deny that the Lease Agreement was still in effect at that time, and that they had any obligation to notify Plaintiff of the same, and the remaining allegations, and negative inferences, in paragraph 35 are also denied.

36.     Despite their knowledge of the existence of the Lease Agreement, defendants did not provide any written notice to Narkiewicz-Laine that they intended to evict him therefrom, as required by 735 ILCS 5/9-207.

**ANSWER:**     Defendants admit only that they did not provide Plaintiff with any written notice. The remaining allegations, and negative inferences, in paragraph 36 are denied.

37.     Despite their knowledge of the existence of the Lease Agreement, defendants did not file or serve an eviction complaint and/or claim for rent with the Circuit Clerk's office in Galena, under the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-106-07.

**ANSWER:**   Defendants admit only that they did not file or serve an eviction complaint and/or claim for rent with the Circuit Clerk's office in Galena under the Illinois Forcible Entry and Detainer Act. The remaining allegations, and negative inferences, in paragraph 37 are denied.

38.     Despite their knowledge of the existence of the Lease Agreement, defendants did not obtain an order of eviction from the County Court in Galena, under 735 ILCS 5/9-101 *et seq.*

**ANSWER:**   Defendants admit only that they did not obtain an order of evidence from the County Clerk in Galena. The remaining allegations, and negative inferences, in paragraph 38 are denied.

39.     Notwithstanding their failure to follow Illinois law to evict Narkiewicz-Laine, upon information and belief and as defendant Kevin Doyle admitted in a written statement to the Galena Police Department dated July 28, 2010 (the "Police Statement"), defendants Kevin Doyle and Patricia Doyle entered the Premises on July 20, 2010 and removed the entire contents thereof without Narkiewicz-Laine's knowledge or permission.

**ANSWER:**   Defendants admit only that Kevin Doyle stated in a written statement given to the Galena Police Department that he entered the Premises on July 20, 2010 and removed the contents therein. The remaining allegations, and negative inferences, in paragraph 39 are denied.

40.     Kevin Doyle and Patricia Doyle admit that they threw many of the items from the Premises into a garbage dumpster rented by Kevin Doyle for that purpose, and stored certain other items of Narkiewicz-Laine's personal property in storage units rented by Kevin Doyle for that purpose.

**ANSWER:**   Defendants admit only that Kevin Doyle stated in a written statement given to the

Galena Police Department that he threw many of the items from the Premises into a garbage dumpster rented by Kevin Doyle, and stored certain other items removed from the Premises in storage units rented by Kevin Doyle for that purpose. The remaining allegations in paragraph 40 are denied.

41.     Upon information and belief, Michael Doyle and other John Does assisted Kevin and Patricia Doyle in emptying the Premises, disposing of some of the contents in the dumpster and relocating the rest of it in the storage units.

**ANSWER:**     Denied.

42.     At approximately 6pm on July 21, 2010, defendant Kevin Doyle called Narkiewicz-Laine's cell phone number and advised him that he had sold the Property and that closing was scheduled for the following day, July 22 - the very day Narkiewicz-Laine's check for 2010 rent cleared the Doyle Trust account.

**ANSWER:**     Defendants admit only that: (i) Kevin Doyle called Plaintiff's cell phone number at approximately 6:00 p.m. on July 21, 2010; (ii) Kevin Doyle advised Plaintiff that he had sold the Property, and that closing was scheduled for that Friday, which was July 23, 2010; and (iii) a check in the amount of $600 cleared the account for the John T. Doyle Trust on July 22, 2010. Defendants deny that Michael Doyle advised Plaintiff that the closing was scheduled for July 22, 2010, deny that Plaintiff's check in the amount of $600 was for the 2010 rent for the Premises, and deny any remaining allegations of paragraph 42, and any negative inferences therein.

43.     In that July 21 call, Kevin Doyle claimed that he had tried unsuccessfully to reach Narkiewicz-Laine by telephone at the Museum to inform him of the pending sale of the Property. He did not, at that or any other time, claim to have provided Narkiewicz-Laine with any form of written notice of sale of the Property or termination of the Lease Agreement and neither he nor any of the defendants did so.

The Museum has no knowledge or record of any attempt by Kevin Doyle or any of the defendants to contact Narkiewicz-Laine in 2010.

**ANSWER:** Defendants admit only that: (i) in the July 21 call, Kevin Doyle asserted that he had tried unsuccessfully to reach Plaintiff by telephone at the Museum to inform him of the pending sale of the Property, and (ii) Kevin Doyle did not claim at that time to have provided Plaintiff with any written notice of the sale of the Property. Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43, and therefore deny the same.

44. In the course of that July 21 call, Kevin Doyle also advised Narkiewicz-Laine, much to the latter's shock and dismay, that he had removed the entire contents of the Premises and thrown everything he considered of "little value" in the dumpsters which had been carted away as trash by a company, Montgomery Trucking, which he had hired for that purpose. Stunned, Narkiewicz-Laine reminded Kevin Doyle that there were many items of considerable value in the Premises, including 20-years-worth of his own artwork.

**ANSWER:** Defendants admit only that in the July 21 call, Kevin Doyle advised Plaintiff that the contents of the Premises, which had apparently been abandoned by Plaintiff, had been removed, and that certain of those contents had been placed into a dumpster which had been carted away by Montgomery Trucking. The remaining allegations in paragraph 44 are denied.

45. A few minutes later, Mr. Narkiewicz-Laine called Kevin Doyle back, specifically to ask about various valuable items belonging to, intended for donation to, or consigned to the Museum which were stored at the Premises. In that call, Kevin Doyle stated, in words or in substance, "Anything of value that I thought I could sell I kept" and also then informed Narkiewicz-Laine that he had just learned from Montgomery Trucking that the contents of the dumpsters had already been dumped in a landfill in East

Moline, Illinois.

**ANSWER:** Defendants admit only the allegations contained in the second sentence of paragraph 45. Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 45, and therefore deny the same.

46.     That very day, Narkiewicz-Laine filed a police report concerning the loss of his and others' property from the Premises and demanded that defendants return whatever contents from the Premises they had kept.

**ANSWER:** Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 46, and therefore deny the same.

47.     The next day, Narkiewicz-Laine, together with Sommers and a museum intern named David Heitkemp, met Kevin Doyle at a storage garage, which Doyle claimed he had rented to store various articles taken from the Premises. They retrieved various items belonging to Narkiewicz-Laine and/or the Museum, but very few of Narkiewicz-Laine's art works or the valuable objects belonging to, intended for, or consigned to, the Museum which had been stored in the Premises, were in that storage garage.

**ANSWER:** Defendants admit only that Kevin Doyle met with Plaintiff on July 22 at a storage garage where certain items from the Property were stored, and that Plaintiff claimed and took possession of many of those items. The remaining allegations in paragraph 47 are denied.

48.     Then again, on July 30, 2010, Kevin Doyle, in the presence of a Galena police officer, showed Narkiewicz-Laine, Sommers and Heitkemp a few additional items that he had removed from the Premises and retained; once again, very few of those items were Narkiewicz-Laine's artwork and very few of the valuable items belonging to, intended for, or consigned to the Museum. Those additional items were left in the storage garage, pending the conclusion of the police investigation.

**ANSWER:** Defendants admit only that Kevin Doyle met with Plaintiff and a Galena Police Officer on July 30 to review certain items from the Property, and that those items were left in the storage garage. The remaining allegations in paragraph 48 are denied.

49. Kevin Doyle then advised that Narkiewicz-Laine had been shown everything still in existence; the rest - including all of the artwork - had been destroyed in the landfill.

**ANSWER:** Defendants deny that the contents of the Premises which had been removed and/or destroyed included any "artwork." The remaining allegations in paragraph 49 are admitted.

50. Other than the objects identified on July 22 and July 30, 2010 at the storage garage, none of the property in the Premises prior to the unlawful eviction has been found or recovered by plaintiffs, despite plaintiff's extensive efforts to locate said property and the remainder has presumptively been destroyed.

**ANSWER:** Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 50, and therefore deny the same.

51. Among the items removed by defendants from the Premises are many original works of art created by Narkiewicz-Laine over his lifetime, including paintings, drawings, and unique or limited edition photographs made solely for exhibition purposes. A schedule of some of those works by title, date of creation and exhibition history which have been identified to date is annexed hereto as Exhibit A.

**ANSWER:** Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 51, and therefore deny the same.

52. Narkiewicz-Laine owns all copyright interest in and to each of the works on Exhibit A hereto and has not transferred title in and to any of those works.

**ANSWER:** Defendants lack the knowledge and information sufficient to form a belief as to the

truth of the allegations in paragraph 52, and therefore deny the same.

53.    Many of these original works of art were large paintings created in oil, acrylic or mixed media on canvas or wood, as well as unique or limited edition photographs made for exhibition purposes.

**ANSWER:**    Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 53, and therefore deny the same.

54.    Many of these original works of art have been exhibited in museum and gallery exhibitions open to the public in various institutions both in the United States and abroad.

**ANSWER:**    Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 54, and therefore deny the same.

55.    Many of these original works of art have been the subject of favorable published comment and criticism in the United States and abroad.

**ANSWER:**    Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 55, and therefore deny the same.

56.    Some of these original works of art have been offered for sale to the public.

**ANSWER:**    Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 56, and therefore deny the same.

57.    Also among the property owned by Narkiewicz-Laine and removed by defendants from the Premises are: (i) other original works of art created by Mr. Narkiewicz-Laine; (ii) a large number of sketches, unfinished works, unexhibited works, studies, notes and sketch books created by Narkiewicz-Laine; (iii) a number of paintings by Eve Garrison; (iv) a series of Russian icons; (v) a collection of rare rural implements; (vi) the accumulated documentation of Narkiewicz-Laine's creative life, including but not limited to preparatory and raw materials for works of art; rolls of canvas and stretchers for paintings; photographs; receipts and invoices; exhibition reviews; correspondence; and (vii) a

significant art reference library.

**ANSWER:** Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 57, and therefore deny the same.

58. Among the items removed by defendants from the Premises are multiple works owned or consigned to the safekeeping of the Museum and were being stored there at the request of the Museum and with Narkiewicz-Laine approval prior to or subsequent to exhibition at another location, or because they were undergoing examination for purposes of restoration and/or repair.

**ANSWER:** Defendants lack the knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 58, and therefore deny the same.

## ANSWER TO COUNT I

59. Plaintiff Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 58 set forth hereinabove, as if the same were fully set forth herein.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1 through 58 as if set forth more fully herein.

60. Plaintiff Narkiewicz-Laine's claim arises under 17 U.S.C. § 106(a)(3)(B) for violation of his right of integrity in multiple Works of Visual Art as defined in 17 U.S.C. § 101.

**ANSWER:** Defendants admit only that Plaintiff makes claims under 17 U.S.C. §106(a)(3)(B). Defendants deny that Plaintiff meets the criteria to prevail on any of his claims, deny that he has or ever had any Works of Visual Art or a right of integrity in any Works of Visual Art, and deny the remaining allegations in paragraph 60, and any negative inferences thereof.

61. Defendants removed, without authorization, multiple Works of Visual Art as defined in that Act, which had been stored in the Premises pursuant to the Lease Agreement.

**ANSWER:** Denied.

62.    Despite Narkiewicz-Laine's demand for return of all the Works of Visual Art removed by defendants from the Premises, defendants have failed to return any of them and claim that they have been destroyed.

**ANSWER:**    Denied.

63.    Defendants intentionally and/or grossly negligently destroyed the said Works of Visual Art by causing them to be dumped in a landfill and/or by other means presently unknown to plaintiff Narkiewicz-Laine.

**ANSWER:**    Denied.

64.    Said Works of Visual Art were created by Narkiewicz-Laine and were not works for hire.

**ANSWER:**    Defendants deny that Plaintiff created any "Works of Visual Art." Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64, and therefore deny the same.

65.    Narkiewicz-Laine did not transfer to any said Works of Visual Art created prior to 1990.

**ANSWER:**    Defendants deny that Plaintiff created any "Works of Visual Art." Defendants note that the allegations in paragraph 65 make no sense, and therefore deny such allegations or inferences thereof.

66.    Said Works of Visual Art have been publicly exhibited in the United States and/or abroad and have received critical acclaim in magazines, newspapers, and/or are considered by experts in the field of modern art to be works of recognized stature.

**ANSWER:**    Defendants deny that Plaintiff created any "Works of Visual Art." Defendants lack the knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66, and therefore deny the same.

67.    The destruction of said Works of Visual Art of recognized stature by defendants without

authorization constitutes a violation of Narkiewicz-Laine's right of integrity.

**ANSWER:**     Denied.

68.     As a direct and proximate result of defendants' actions, Mr. Narkiewicz-Laine has been damaged in an amount to be determined at trial.

**ANSWER:**     Denied.

<u>**ANSWER TO COUNT II**</u>

69.     Plaintiff Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 58 set forth hereinabove, as if the same were fully set forth herein.

**ANSWER:**     Defendants repeat and restate their answers to paragraphs 1 through 58 as if set forth more fully herein.

70.     Defendants removed, without authorization, multiple items of tangible personal property owned by Narkiewicz-Laine or consigned to his safekeeping and stored in the Premises, including (1) paintings, drawings, photographs, sculptures, audiovisual works, sketches, studies, unfinished works, components of art installations and other artwork created by Narkiewicz-Laine and others which do not qualify as Works of Visual Art of recognized stature as defined by 17 U.S.C. § 101 *et. seq:*, (2) equipment owned and used by Narkiewicz-Laine in the preparation, preservation, and documentation of his art and professional activities; (3) personal records, including tax records; (4) a significant library of books for art research; and (5) other personal effects owned by Narkiewicz-Laine.

**ANSWER:**     Denied.

71.     Despite Narkiewicz-Laine's several demands to defendants to return all the items of his tangible personal property removed by defendants from the Premises, they have failed and refused to do so.

**ANSWER:**     Denied.

72.     Narkiewicz-Laine has been deprived of said tangible personal property by defendants for a

considerable period of time.

**ANSWER:** Denied.

73. Narkiewicz-Laine has a right to immediate possession of said tangible personal property.

**ANSWER:** Denied.

74. Defendants have therefore converted said tangible personal property belonging to Narkiewicz-Laine.

**ANSWER:** Denied.

75. As a direct and approximate result of defendants' actions, Mr. Narkiewicz-Laine has been damaged in an amount to be determined at trial.

**ANSWER:** Denied.

<b><u>ANSWER TO COUNT III</u></b>

76. Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 58 set forth hereinabove, as if the same were fully set forth herein.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1 through 58 as if set forth more fully herein.

77. Defendants' actions set forth herein above constitute a violation of the Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et. seq.*

**ANSWER:** Denied.

78. In 2004, Narkiewicz-Laine entered into a Lease Agreement with the Doyle family on behalf of the John Doyle Trust, which lease remained valid and in force for the entire period of the events set forth herein.

**ANSWER:** Defendants admit only that the John T. Doyle Trust A and the John T. Doyle Trust B entered into an oral lease with Plaintiff in 2004. The remaining allegations of paragraph 78 are

denied.

79.     The extent and bounds of the Premises were specifically a second floor Premises in the Property, owned and controlled by the Doyle family and/or the John Doyle Trust, at 125 South Main Street, Galena, Illinois.

**ANSWER:**     Admitted.

80.     The Lease Agreement established a month-to-month tenancy. Rent was set at $50 a month and remained at that price throughout the term of the lease. Payment was to be by check payable to "John Doyle Trust," mailed to, or deposited by hand at, Galena State Bank & Trust in Galena.

**ANSWER:**     Defendants deny that the allegations in paragraph 80 constitute the full and complete terms and conditions of the oral lease at issue. The remaining allegations of paragraph 80 are admitted.

81.     After initially paying the rent monthly, Narkiewicz-Laine began paying the rent less frequently in larger amounts to cover several months at a time. Defendants accepted and/or ratified this payment method by continuing to cash the checks when they arrived, and by not informing Narkiewicz-Laine that they objected to same or seeking termination of the Lease Agreement as a consequence.

**ANSWER:**     Defendants admit only that Plaintiff initially paid rent on a monthly basis, per the terms of the oral lease, and that Plaintiff thereafter failed to pay rent on a monthly basis, frequently paying several months past due, and that Defendants did, in several instances, accept payment of rent that was past due. The remaining allegations of paragraph 81 are denied.

82.     Defendants knew that Narkiewicz-Laine had a valid Lease Agreement for the Premises.

**ANSWER:**     Denied.

83.     On or about July 20, 2010, defendants evicted Narkiewicz-Laine from the Premises and

retained for themselves and/or caused to be destroyed the entire contents of the Premises.

**ANSWER:**    Denied.

84.    Defendants did not provide any written notice to Narkiewicz-Laine that they intended to evict him from the Premises, as required by 735 ILCS 5/9-207.

**ANSWER:**    Defendants admit only that they did not provide Plaintiff with any written notice. The remaining allegations of paragraph 84, and any negative implication thereof, are denied.

85.    Defendants did not file or serve an eviction complaint and or claim for rent with the Circuit Clerk's office in Galena, as required by Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-106-07.

**ANSWER:**    Defendants admit only that they did not file or serve an eviction complaint and or claim for rent with the Circuit Clerk's office in Galena. The remaining allegations of paragraph 85, and any negative implications thereof, are denied.

86.    Defendants did not obtain an order of eviction or a judgment for rent from the County Court in Galena, as required by 735 ILCS 5/9-101 *et seq.*

**ANSWER:**    Defendants admit only that they did not obtain an order of eviction or a judgment for rent from the County Court in Galena. The remaining allegations of paragraph 86, and any negative implications thereof, are denied.

87.    On demand from Narkiewicz-Laine, defendants have returned some of the contents of the Premises and claim that what they have returned is the only property taken from the Premises that is still in their possession, custody or control.

**ANSWER:**    Admitted.

88.    Defendants have refused to return the remainder of the property taken from the Premises, claiming that they caused that property to be destroyed, nor have they compensated Narkiewicz-Laine for the value of the said items.

**ANSWER:**   Defendants admit only that they have not, and cannot, return any property from the Premises that they do not have in their possession or control. The remaining allegations of paragraph 88, including any negative inferences therein, are denied.

89.   The above actions are in violation of the Forcible Entry and Detainer Act and have caused Narkiewicz-Laine damages in an amount to be determined at trial.

**ANSWER:**   Denied.

WHEREFORE, for the above and foregoing reasons, Defendants, Kevin C. Doyle, Michael W. Doyle, Pamela Doyle, the John T. Doyle Trust A, and the John T. Doyle Trust B, request judgment in their favor and against Plaintiff, Christian K. Narkiewitz-Laine, on all counts and claims in his Complaint, and award them the costs and fees of their defense hereto.

Respectfully submitted,

KEVIN C. DOYLE, MICHAEL W. DOYLE,
PAMELA DOYLE, JOHN T. DOYLE TRUST A,
and JOHN T. DOYLE TRUST B, Defendants

By:____/s/ Saskia Nora Bryan_____
      One of their attorneys

Robert S. Minetz, IRDC No. 1925563
Saskia Nora Bryan, IRDC No. 6255682
LATIMER LeVAY FYOCK LLC
55 West Monroe Street, Suite 1100
Chicago, Illinois   60603
(312) 422-8000
(312) 422-8001 (Fax)

David P. Faulkner
FAULKNER LAW FIRM
6832 Stalter Drive
Rockford, Illinois   61108
(815) 963-8050