**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

---

| | |
|---|---|
| CHRISTIAN K. NARKIEWICZ-LAINE, | x<br>:<br>: |
| Plaintiff, | :<br>: |
| - against - | :<br>: |
| | :    NO.: 11 CV 1826 |
| KEVIN C. DOYLE, MICHAEL W. DOYLE, PAMELA DOYLE, JOHN T. DOYLE TRUST A and JOHN T. DOYLE TRUST B, and JOHN DOES 1-5 | :<br>:    THE HONORABLE JUDGE PHILIP<br>:    G. REINHARD<br>: |
| Defendants. | :    MAGISTRATE JUDGE P. MICHAEL<br>:    MAHONEY<br>: |
| | x |

---

**MOTION TO FILE A SECOND AMENDED COMPLAINT**

Plaintiff Christian K. Narkiewicz-Laine ("Narkiewicz-Laine" or "Plaintiff"), by and

through his undersigned counsel, Davis Wright Tremaine LLP and Wolf and Tennant, submits

this Motion to File a Second Amended Complaint to add a claim for punitive damages under the

Conversion and Forcible Entry and Detainer (trespass) counts.[1]

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings. Under the

rule, "[t]he court should freely give leave [to amend] when justice so requires." *Id.; Alioto v.*

*Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). "[D]enial of leave to amend pleadings "is

appropriate only in those limited circumstances in which undue delay, bad faith on the part of the

moving party, futility of the amendment, or unfair prejudice to the non-moving party can be

demonstrated." *National Union Fire Insurance Co. of Pittsburgh, PA v. Westport Insurance*

*Corp.*, 2012 U.S Dist. LEXIS 27337, at *3 (N.D. Ill. Feb. 29, 2012). None of those

circumstances pertain here.

---

[1] A copy of the proposed Second Amended Complaint and a comparison showing the proposed changes from the Second Amended Complaint are attached hereto.

1

On or about March 15, 2011, Plaintiff filed his Complaint in this action alleging violation of his moral rights pursuant to the Visual Artists Rights Act (VARA), 17 U.S.C. § 106A, a trespass action in violation of the Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et seq.*, and conversion.[2] On or about January 3, 2012, this Court granted Plaintiff's motion on consent to amend the Complaint to add further claims under VARA and a claim for negligent conversion. *See* First Amended Complaint. As set forth below, prior to the filing of the Complaint and the First Amended Complaint, Plaintiff lacked facts sufficient to allege in good faith that Defendants had acted maliciously or grossly negligently with respect to the allegations against them. Now that Plaintiff has had the opportunity to take Defendants' depositions and those of several third-parties, new facts and admissions have come to light which now strongly justify the allegation and hence this motion.

Defendants asserted to Plaintiff and to the Galena Police Department prior to this lawsuit, and in their Answers to the Complaint and Amended Complaint, that the space rented by Plaintiff (the "Premises") in the 125 South Main Street, Galena Illinois building (the "Building") owned by defendants John T. Doyle Family Trusts A and B (the "Trusts") and their contents were clearly "abandoned" because (i) Defendants tried repeatedly to contact Plaintiff to warn him to pay his rent and remove his possessions as the Building was being sold and he must vacate the Premises; (ii) the utilities had been disconnected; and (iii) the contents of the Premises were clearly of little value and mainly garbage. In discovery, however, a different story has emerged.

---

[2] The facts stated herein in support of the present motion are set forth in the Declarations of Christian Narkiewicz-Laine and Ioannis Karalias; in the deposition testimony attached to the Declaration of Christopher Robinson; and in Plaintiff's Rule 56 Statement of Undisputed Facts, all filed in support of Plaintiff's Motion for Partial Summary Judgment on liability on the state law claims on June 29, 2012.

As an initial matter, Kevin Doyle's brother, Michael Doyle -- a co-trustee of the Trusts that were Plaintiff's landlord -- visited the Premises in the few months leading up to the sale of the Building and certainly did not consider them "abandoned" by Plaintiff. He testified in his deposition that he knew the Premises was being rented and on seeing the many personal possessions in the Premises he assumed that neither the lease nor the contents were abandoned and that any buyer would be required to take the Plaintiff as a tenant along with the Building. He claims he had no idea until long after the Building was sold that his brother had evicted the tenant and thrown out his possessions.[3] Prior to taking Michael Doyle's deposition, Plaintiff did not know that Michael Doyle, who has now been dismissed as a defendant, believed that he was selling the Building with an existing tenant.

<u>Notice to Plaintiff</u>

In Kevin Doyle's July 28, 2010 police report – essentially the only statement of Defendants' position available to Plaintiff prior to the filing of the Complaint – Kevin Doyle stated that "When we put the Buildings up for sale in the late winter/early spring of 2010, I made several attempts to contact Christian at the only number I had, his work number, and left detailed messages to "contact me ASAP."[4] If he had in fact left a series of urgent messages alerting Plaintiff in detail to the sale of the Building and making a final, specific demand for rent, punitive damages would likely be inappropriate. But, contrary to his statement in the police report, he admitted in his April 2012 deposition that he did no such thing. In that deposition, he testified that he called Plaintiff's number "two or three times" but hung up without leaving a message on all but a single occasion. He readily admits that on the sole occasion he supposedly left a voice message for Plaintiff, he simply identified himself, stated that he was calling "in

---

[3] Michael Doyle Dep. 48:15–49:6; 50:6 – 51:12.
[4] See Kevin Doyle Police Statement; Robinson Declaration, Ex. B, pp. 436-438 (Docket #59-2)

regards to your storage unit down on Main Street," and asked Plaintiff to call him. He did not say that the Trusts were selling the Building, nor that Plaintiff must vacate the Premises.[5] This was no urgent "detailed" message giving Plaintiff notice that anything was seriously amiss. Indeed, Plaintiff who was traveling on business had no idea that his 2009 rent check had not been cashed, and because Defendants' prior course of conduct had reassured Plaintiff that irregular lump sum payments of his monthly rent were acceptable to them, Plaintiff was not late on his 2010 rent either.[6] Kevin Doyle admits that Defendants made no further attempt to contact Plaintiff until July 21, 2012, **after** they had evicted him and **after** he had paid his 2010 calendar year rent.[7]

Further, as Pamela Doyle testified at her deposition, Defendants still had an email address for Plaintiff and had not hesitated to use it a few times in the past to ask him to come up to date on his rent. She admitted that she did not attempt to email Plaintiff at all after April 2009, a full 15 months before Defendants evicted Plaintiff, because, as she testified, she was just too busy.[8] Nor did Defendants make any attempt by any other means to reach Plaintiff (who has a house in Galena and banks at the same bank Pamela Doyle works in) or warn him that he was to be evicted.[9] Defendants misrepresented their efforts to reach Plaintiff to the police and their callous disregard for Plaintiff's property as revealed in the deposition testimony justifies a demand for punitive damages.

---

[5] Kevin Doyle Dep. 110: 6-24; 113: 7-16.
[6] Narkiewicz-Laine Dec. ¶18 and Ex. C; Pamela Doyle Dep. 30:24–31:21; 39:17–40:8.
[7] Narkiewicz-Laine and the Museum registrar responsible for checking the voice mail, deny ever receiving any message from Mr. Doyle. Narkiewicz-Laine Dec. ¶ 22; Narkiewicz-Laine Dep. 150:6–151:1.
[8] Pamela Doyle Dep. 39:19–40:21.
[9] Nor was it true that all the utilities had been disconnected. In his police statement, Kevin Doyle said that when he entered the Premises in January 2010 to show the Building to a prospective purchaser, "the utilities had been turned off" and "remained off until the Building was sold." But as Mr. Doyle well knew by the date of this statement, the gas had not been turned off and was indeed paid through the end of the lease by Plaintiff.

Contents of the Premises

Defendants have always maintained to Plaintiff and to the Galena Police that there was very little of value in the Space and that what little there was they returned to Plaintiff. In his report to the Galena Police Department, Kevin Doyle described the destroyed contents as "garbage."[10] Specifically, Defendants have consistently insisted that they saw no works of art in the premises and destroyed none. For example, in their Answers to the Complaint and to the First Amended Complaint, Defendants denied "that the contents of the Premises which had been removed/destroyed included any "artwork."[11] They also repeatedly denied that the contents of the premises included any paintings, drawings, or limited edition prints, sculptures or photographs. In their Answers they state that: "Defendants deny that [plaintiff] has or ever had any Works of Visual Art".[12] Works of Visual Art are defined in VARA as:

> (1) a painting, drawing, print or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or
>
> (2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.

17 U.S.C. § 101.

Plaintiff knows that there were in fact many works of art in the Premises, but in the face of these strong denials from Defendants, the possibility remained that Defendants had somehow been unaware that they were destroying Plaintiff's art, either because they hired others to do

---

[10] Kevin Doyle Police Statement; Robinson Declaration, Ex. B, p.p. 436-438 (Docket #59-2).
[11] Answer ¶ 49; Answer to First Amended Complaint ¶ 49.
[12] See Answer ¶ 12; and ¶¶ 65-71; Answer to First Amended Complaint ¶12.

most of the work or that they did not recognize it for what it was.  Notwithstanding these denials, in the Spring of 2012 defendants Kevin and Pamela Doyle for the first time admitted in their depositions that they knew there were paintings in the Premises and that they deliberately caused them to be destroyed by throwing them in the dumpster to be dumped in a landfill.  When shown photographs of paintings by Plaintiff that had been in the Premises, Kevin Doyle identified several specific large paintings that he had thrown away and testimony by third parties confirmed that paintings of this type were seen discarded in the dumpster.[13]  Pamela Doyle admitted that there were photographs in the Premises which Defendants discarded.[14]  Defendants' prior insistence that all they threw away was garbage and their complete denials in their Answers that they threw away any works of art at all are directly contradicted by this testimony; they not only recognized works of art in the Premises but deliberately chose not to safeguard them among the items they deemed of "value" to set aside.

Indeed, it is clear from their testimony and that of the new buyers that Defendants' sole interest in evicting Plaintiff and destroying his possessions was to deliver the Premises empty as required by the Building purchaser on the closing date and if there was money to be made from any of Plaintiff's "abandoned" possessions, they were happy to keep it.[15]  Defendants destroyed the majority of Plaintiff's life's work, as well as family heirlooms, collections of ethnographic interest, unpublished writings and records of unfinished works, with barely a thought about their tenant of 6 years.

---

[13] See Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, pp. 6-8 and the testimony cited therein.
[14] Id.
[15] Donna Andresen Dep. 19:20 –20: 16: ("Q:  But it was your clear understanding that when you were purchasing the building that it would not come with a tenant?  A: Correct. . . .  I wanted empty rooms up there, completely empty."); Kevin Doyle Dep. 120: 1-10; 124:22-125:1. ( Q: "Did it concern you that Christian was renting the space at that point?  A: Well, it was something I had to clear the stuff out of if I couldn't get ahold of him."); Pamela Doyle Dep. 44:20-21; 51:19–52: 5 ("If we are going to sell that, we have got to see if we can try to get him out of there . . .").

This testimony justifies the proposed amended pleading. Defendants are not able to cite to any of the reasons set forth by the Supreme Court and this Circuit for denying the amendment. Amendment of the pleadings at this stage to add a demand for punitive damages would not be unfairly prejudicial to Defendants. Plaintiff is moving to amend the complaint less than three months after deposition testimony late in discovery revealed the scope of Defendants' willful actions, the same actions which help establish the grounds for Plaintiff's motion for partial summary judgment filed at the end of last month. Plaintiff has therefore not unduly delayed in attempting to amend. *C.f. Philpot v. City of Rockford*, 2011 U.S. Dist. LEXIS 116985, at *4 (N.D. Ill. Oct. 11, 2011) (denying motion to amend after delay of 3 years and 8 months following deposition which provided grounds for amendment). Although fact discovery has now closed, the amendment neither sets forth a new theory of liability nor opens new factual lines of inquiry that would require additional fact discovery. *C.f Sanders v. Int'l Union of Operating Eng'rs, Local 150*, 6 Fed. Appx 443, 445 (7th Cir. 2001) (amendment denied when discovery would have to be reopened); *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861-62 (7th Cir. 2001) (affirming denial of motion to amend to add promissory estoppel claim when discovery concluded because it was a new theory of liability).

Finally, because the proposed Second Amended Complaint is not subject to dismissal under Fed. R. Civ. P 12(b)(6), the amendment is not futile. *Moore v. State of Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 183, 83 S. Ct. 227, 230 (1962)). Punitive damages are available in Illinois for conversion and trespass torts as alleged here. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 187 (1978) (punitive damages awardable on tort actions); *Cirrincione v. Johnson*, 184 Ill.2d 109, 114 (1998) (affirming award of punitive damages on conversion claim). Punitive damages may be awarded when "the defendant acts willfully, or

with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay*, 74

Ill.2d at 186. Whether defendant's conduct was sufficiently willful or wanton is for the jury to

decide. *Cirricione*, 184 Ill.2d at 116.


## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's

motion to file a Second Amended Complaint to add a demand for punitive damages on the state

law claims.

Dated: New York, New York
        July 26, 2012

                                        Respectfully submitted,

                                        DAVIS WRIGHT TREMAINE LLP

                                        By: s/s Christopher Robinson
                                            Christopher J. Robinson
                                            Marcia B. Paul
                                        1633 Broadway 27th floor
                                        New York, New York 10019
                                        (212) 489-8230
                                        *Primary and Trial Counsel for Plaintiff*


                                        James H. Wolf
                                        James M. Wolf
                                        WOLF & TENNANT
                                        33 North Dearborn, suite 800
                                        Chicago, Illinois 60602
                                        (312) 739-0300.


                                        *Local Counsel for Plaintiff*