## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

————————————————————— x

CHRISTIAN K. NARKIEWICZ-LAINE, :
:
Plaintiff, :
:
- against - :
:
: NO.: 11 CV 1826
KEVIN C. DOYLE, MICHAEL W. DOYLE, :
PAMELA DOYLE, JOHN T. DOYLE TRUST A : THE HONORABLE JUDGE PHILIP
and JOHN T. DOYLE TRUST B, and JOHN : G. REINHARD
DOES 1-5 :
: MAGISTRATE JUDGE P. MICHAEL
Defendants. : MAHONEY
:
:
————————————————————— x


### ~~FIRST~~SECOND AMENDED COMPLAINT

Plaintiff Christian K. Narkiewicz-Laine ("Narkiewicz-Laine"), by and through his

undersigned counsel, Davis Wright Tremaine LLP and Wolf and Tennant, as and for his

~~First~~Second Amended Complaint against defendants Kevin C. ~~Doyle, Michael W~~. Doyle, Pamela

Doyle, John T. Doyle Trust A, John T. Doyle Trust B, and John Does 1-5 (collectively, ~~"Doyle~~the

"Doyles"), alleges as follows:

### NATURE OF THE ACTION

1.      This action arises from the unauthorized and illegal removal of almost the entire

contents of a leased space in Galena, Illinois, rented from the Doyle defendants by plaintiff

Narkiewicz-Laine, which contents included literally dozens of exhibited and valuable works of art,

now totally destroyed or mutilated.

2.      Although Narkiewicz-Laine had leased the premises since early 2004 and had been

remitting the agreed-upon rent for six years, in July 2010, without notice to Narkiewicz-Laine and

without following any of the legal requirements for eviction under Illinois law, defendants

willfully and with gross disregard for plaintiff's rights "evicted" him and removed virtually all of his property from the leased premises, withholding a few items for themselves and causing the rest to be destroyed in a landfill.

3.      Among the many items stored by Narkiewicz-Laine in the premises and now destroyed or mutilated were over 20 years of his life's work as a painter, sculptor, photographer, architect, designer and poet, as well as most of the records of his work, the equipment used to create new works of art, and certain other valuable property owned either by Narkiewicz-Laine or by others and consigned to Narkiewicz-Laine for safekeeping.

4.      Plaintiffs bring this action for violation of the right of integrity under the Visual Artists Rights Act, 17 U.S.C. § 106A(a)(3)(A) and (B); violation of various provisions of the Illinois' Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et seq.;* common law conversion and in the alternative negligence.

## THE PARTIES

5.      Plaintiff Narkiewicz-Laine is an architect, painter, and sculptor.  Since 1988, he has also been the President and Director of The Chicago Athenaeum: The Center for Architecture and Urban Studies, a.k.a. The Chicago Athenaeum ("The Chicago Athenaeum" or "the Museum"). Since 2007, he has also been the Director and CEO of The European Centre for Architecture Art Design and Urban Studies based in Dublin, Ireland and Athens, Greece.  Narkiewicz-Laine is, and was during the events alleged herein, a citizen of the United States, maintaining residences in Galena and Chicago, as well as a residence in Naxos, Greece.

6.      Defendant Kevin C. Doyle, a son of John T. Doyle, resides at 1130 Ferry Landing Road, Galena, Illinois and is a co-trustee of the John T. Doyle Trust A and of the John T. Doyle Trust B.

7.      Upon information and belief, former defendant Michael W. Doyle, also a son of John T. Doyle, resides at 201 S. High Street, Galena, Illinois and is employed at the Galena, Illinois office of the Homestead Appraisal Limited, a real estate brokerage.  He is also a co-trustee of the John T. Doyle Trust A and of the John T. Doyle Trust B.

8.      Pamela Doyle is the wife of defendant Kevin C. Doyle and, upon information and belief, also resides at 1130 Ferry Landing Road, Galena, Illinois.  She is the Portfolio Manager at the Galena State Bank and Trust Co., Galena.

9.      Upon information and belief, defendant the John T. Doyle Trust A is a marital trust, established under a Trust Agreement executed by grantor John T. Doyle on December 20, 1994.

10.      Upon information and belief, defendant the John T. Doyle Trust B is a residuary trust, established under a Trust Agreement executed by grantor John T. Doyle on December 20, 1994.

11.      John Does 1-50, upon information and belief, are individuals and/or entities, presently unnamed but who may be named as additional defendants to one or more claims for relief as a result of discovery.

**JURISDICTION AND VENUE**

12.      This action arises, *inter alia,* under 17 U.S.C. § 101, *et seq.*, for violation of plaintiff Narkiewicz-Laine's right of integrity in his Works of Visual Art pursuant to 17 U.S.C. § 106A.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

13.      This Court has supplemental jurisdiction over the state statutory and common law claims pursuant to 28 U.S.C. § 1367(a), as they are related to the federal claims and form part of the same case or controversy.

3

14.     Venue is proper in this district under and pursuant to 28 U.S.C. § 1391(b), as defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTUAL BACKGROUND

15.     Narkiewicz-Laine is an accomplished architect, painter, photographer, writer, critic and poet who has published extensively on architecture and design and has exhibited his own works of art widely since at least 1980.  He has been the President and Director of The Chicago Athenaeum since 1988.

16.     The Chicago Athenaeum is an international museum of architecture and design, founded in 1988.  It is a not-for-profit 501(c)(3) cultural institution with its principal place of business located at The Historic Fulton Brewery Building, 601 South Prospect Street, Galena, Illinois.  It also maintains offices and operations in Chicago and Schaumberg, Illinois; Dublin, Ireland; Florence, Italy; and Athens, Greece.

17.     The mission of the Museum is to promote good architecture, design and urban planning through public programs, exhibitions, and sponsorship of awards.  In 2001, the Museum moved its administrative headquarters from Chicago to the Historic Fulton Brewery Building at 601 South Prospect Street, Galena, Illinois, pending the lease of new premises in Chicago.

18.     At or around that time, Narkiewicz-Laine purchased a personal residence in Galena.  He also sought storage and working space for his extensive personal property, primarily the paintings, sculpture, drawings, photographs, prints, architectural renderings, and poetry he had created over his life-time and new works, works in progress and associated materials such as his art reference library, his records, and his equipment.

**The Lease Agreement**

19.     In early 2004, Narkiewicz-Laine entered into an oral lease with the Doyle family to rent storage and work space in a building the latter owned or controlled at 125 South Main Street, Galena, Illinois (the "Property").  The rented space (the "Premises") was situated on the second floor of a two-story brick building in proximity to the then location of the Museum.

20.     The Doyles and Narkiewicz-Laine orally agreed that rent for the Premises would be $50 per month and that Mr. Narkiewicz-Laine would be responsible for payment of utilities in the Premises (the "Lease Agreement").

21.     After they reached that Lease Agreement and pursuant thereto, Narkiewicz-Laine moved certain personal property into the Premises, supplementing it from time to time over the years with additional materials, including new works of art that he created, older works created by him that he retrieved from exhibitions around the world or other locations, art supplies and tools that he purchased, personal records, and artwork and other artifacts consigned to his safe-keeping by third parties, including the Museum.  These materials remained in the Premises until 2010, when they were removed without authority by defendants.

22.     For the period of Narkiewicz-Laine's lease on the Premises, the only persons with keys to the Premises (other than one or more of defendants in their capacity of landlord) were Narkiewicz-Laine and the Director of Administration of the Museum, Lary L. Sommers ("Sommers").

**Payments Under the Lease Agreement**

23.     From February 2004 until February 2006, Narkiewicz-Laine paid the rent on the Premises monthly by check.  At the Doyles' instruction, checks were made payable to "John Doyle Trust" and either mailed to, or deposited by hand at, Galena State Bank & Trust in Galena.

DWT 18252953v219984394v1 0092623-000001

24.     The monthly utilities bill from NICOR and Alliant Energy was addressed to, and paid by, Narkiewicz-Laine and the Museum on Narkiewicz-Laine's behalf, for the entire period of the Lease Agreement.  The monthly utilities bill from Alliant Energy was addressed to, and paid by, Narkiewicz-Laine and the Museum on Narkiewicz-Laine's behalf until some point in 2009 when Narkiewicz-Laine had the electricity disconnected.

25.     In 2006, because Mr. Narkiewicz-Laine had begun traveling more frequently abroad and for longer periods in connection with his work including on Museum business, he began paying several months' rent at a time, sometimes in advance, sometimes after the due date. For example, on December 16, 2006, Narkiewicz-Laine paid a check for $250 to cover rent for the last five months of 2006; in 2007, he paid $100 on January 28 for January and February, $300 on July 13 for March through August, and $200 on September 7 for the balance of the year. Increasingly, Narkiewicz-Laine's professional duties obliged him to travel for several months at a time.  Therefore, in 2008, he tendered a single check on July 1 for $600 in full payment for the calendar year.

26.     At no time did any of the defendants inform Narkiewicz-Laine that he or she or it objected to the timing of the rent payments under the Lease Agreement, indeed defendants ratified explicitly the practice of payment by irregular lump sums.  Every check up to and including the check dated July 1, 2008, was accepted, cashed, and cleared through the account of the John Doyle Trust.

27.     On September 8, 2009, Narkiewicz-Laine mailed a check to the Galena State Bank and Trust in Galena from Greece in the amount of $600, constituting payment of rent in full for the calendar year 2009.  Upon information and belief and as later discovered by Narkiewicz-Laine, this check did not clear the account of the John Doyle Trust.  Mr. Narkiewicz-Laine never received

6

any notification from defendants that they had not received the 2009 rent payment or any other complaint or demand for rent for the Premises.

28.     Narkiewicz-Laine was in the Premises in January 2010, at which time his possessions and property appeared intact.  After that January visit, Mr. Narkiewicz-Laine went abroad, where he remained for the first half of 2010.

29.     On or about June 20, 2010, Narkiewicz-Laine returned to Galena and shortly thereafter, in accordance with his past practice, on or about July 19, 2010, wrote a check for $600 annotated "Jan-Dec 2010 Main St. Rent," in full payment for the rent for the Premises for the calendar year 2010.  Narkiewicz-Laine hand-delivered this check to the Galena State Bank and Trust the next day.  That check cleared through the John Doyle Trust account on July 22, 2010.

**Defendants' Sale of the Property**

30.     Upon information and belief, in or around January 2010, defendants decided to sell the Property and began showing it to prospective buyers.

31.     At that time, defendants knew of, and were bound by, the terms of the Lease Agreement, which was in full force and effect.

32.     Defendants did not inform Narkiewicz-Laine of their intention to sell the Property, nor that they were showing it to prospective buyers.

33.     Upon information and belief, at some time after January, 2010 and before July 23 2010, ~~defendants~~defendant Kevin Doyle and Michael Doyle, on behalf of defendants the John T. Doyle Trust A and the John T. Doyle Trust B, sold the Property to John C. Andresen and Donna T. Andresen, who maintained a store on the ground floor of that Property, below the Premises.

34.     At no time prior to July 21, 2010, did defendants or any of them advise Narkiewicz-Laine of this impending sale of the Property.

35.     Defendants at no time notified Narkiewicz-Laine that they were terminating the Lease Agreement, nor did they request that he remove his property from the Premises.

36.     Despite their knowledge of the existence of the Lease Agreement, defendants did not provide any written notice to Narkiewicz-Laine that they intended to evict him therefrom, as required by 735 ILCS 5/9-207.

37.     Despite their knowledge of the existence of the Lease Agreement, defendants did not file or serve an eviction complaint and/or claim for rent with the Circuit Clerk's office in Galena, under the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-106-07.

38.     Despite their knowledge of the existence of the Lease Agreement, defendants did not obtain an order of eviction from the County Court in Galena, under 735 ILCS 5/9-101 *et seq.*

**Defendants' Conversion of Plaintiff's Personalty**

39.     Notwithstanding their failure to follow Illinois law to evict Narkiewicz-Laine, upon information and belief and as defendant Kevin Doyle admitted in a written statement to the Galena Police Department dated July 28, 2010 (the "Police Statement"), defendants Kevin Doyle and Patricia Doyle entered the Premises on or before July 20, 2010 and removed the entire contents thereof without Narkiewicz-Laine's knowledge or permission.

40.     Kevin Doyle and Patricia Doyle admit that they threw many of the items from the Premises into a garbage dumpster rented by Kevin Doyle for that purpose, and stored certain other items of Narkiewicz-Laine's personal property in storage units rented by Kevin Doyle for that purpose.

41.     Upon information and belief, ~~Michael Doyle and~~ other John Does assisted Kevin and Patricia Doyle in emptying the Premises, disposing of some of the contents in the dumpster and relocating the rest of it in the storage units.

8

**Defendants' Notify Narkiewicz-Laine of Their Conversion and Destruction of His Personalty**

42.     At approximately 6pm on July 21, 2010, defendant Kevin Doyle called Narkiewicz-Laine's cell phone number and advised him that he had sold the Property and that closing was scheduled for the following day, July 22 – the very day Narkiewicz-Laine's check for 2010 rent cleared the Doyle Trust account.

43.     In that July 21 call, Kevin Doyle claimed that he had tried unsuccessfully to reach Narkiewicz-Laine by telephone at the Museum to inform him of the pending sale of the Property. He did not, at that or any other time, claim to have provided Narkiewicz-Laine with any form of written notice of sale of the Property or termination of the Lease Agreement and neither he nor any of the defendants did so.  The Museum has no knowledge or record of any attempt by Kevin Doyle or any of the defendants to contact Narkiewicz-Laine in 2010.

44.     In the course of that July 21 call, Kevin Doyle also advised Narkiewicz-Laine, much to the latter's shock and dismay, that he had removed the entire contents of the Premises and thrown everything he considered of "little value" in the dumpsters which had been carted away as trash by a company, Montgomery Trucking, which he had hired for that purpose.  Stunned, Narkiewicz-Laine reminded Kevin Doyle that there were many items of considerable value in the Premises, including 20-years-worth of his own artwork.

45.     A few minutes later, Mr. Narkiewicz-Laine called Kevin Doyle back, specifically to ask about various valuable items belonging to, intended for donation to, or consigned to the Museum which were stored at the Premises.  In that call, Kevin Doyle stated, in words or in substance, "Anything of value that I thought I could sell I kept" and also then informed Narkiewicz-Laine that he had just learned from Montgomery Trucking that the contents of the dumpsters had already been dumped in a landfill in East Moline, Illinois.

DWT 18252953v2 19984394v1 0092623-000001

46.    That very day, Narkiewicz-Laine filed a police report concerning the loss of his and others' property from the Premises and demanded that defendants return whatever contents from the Premises they had kept.

47.    The next day, Narkiewicz-Laine, together with Sommers and a museum intern named David Heitkemp, met Kevin Doyle at a storage garage, which Doyle claimed he had rented to store various articles taken from the Premises.  They retrieved various items belonging to Narkiewicz-Laine and/or the Museum, but very few of Narkiewicz-Laine's art works or other tangible personal property or the valuable objects belonging to, intended for, or consigned to, the Museum which had been stored in the Premises, were in that storage garage and some of those that were returned had been damaged since they had been stored in the Premises.

48.    Then again, on July 30, 2010, Kevin Doyle, in the presence of a Galena police officer, showed Narkiewicz-Laine, Sommers and Heitkemp a few additional items that he had removed from the Premises and retained; once again, very few of those items were Narkiewicz-Laine's artwork and very few of the valuable items belonging to, intended for, or consigned to the Museum.  Some of the items of tangible personal property returned on this date had been damaged since they had been in the Premises.  The additional items were left in the storage garage, pending the conclusion of the police investigation.

49.    Kevin Doyle then advised that Narkiewicz-Laine had been shown everything still in existence; the rest – including all of the artwork – had been destroyed in the landfill.

50.    Other than the objects identified on July 22 and July 30, 2010 at the storage garage, and the objects set forth in paragraphs 51 through 55 below, none of the property in the Premises prior to the unlawful eviction has been found or recovered by plaintiff, despite plaintiff's extensive efforts to locate said property.  The remainder has presumptively been destroyed.

DWT 18252953v2 19984394v1 0092623-000001

**Subsequent Events**

51.     On or about July 4, 2011, Narkiewicz-Laine followed a sign advertising a "Barn Sale" to a location on Black Jack Road near Galena.  A number of objects had been placed for sale both inside and outside of a barn-like structure, including a number of objects Narkiewicz-Laine recognized as his property removed from the Premises.

52.     Among the objects belonging to Narkiewicz-Laine at that location were: (i) one of the unique digital print photographs created by Narkiewicz-Laine for exhibition purposes entitled *Refugee* (30 x 40 inches, 2002); (ii) a 19th Century Greek neoclassical tile; (iii) a number of art books; (iv) a group of 19th Century farm implements gathered for the upcoming Museum exhibition "Primitive Wooden Work and Household  Objects from the Mississippi Valley," including a wood horse harness, a wood saw, two scythes and a collection of planes; (v) two antique headboards and bed frames;  and (vi) one antique chest of drawers.

53.      Narkiewicz-Laine took photographs of most of these objects at the Black Jack Road location.  A photograph of *Refugee* taken by Narkiewicz-Laine at that location is annexed hereto as Exhibit B.  *Refugee* was in a damaged state, dirty and scratched.  Narkiewicz-Laine contacted the police and, when a member of the Sheriff's Department arrived, two men emerged from the barn who claimed that they owned the objects because they had removed them from a dumpster on Main Street in Galena the previous summer.

54.     The Sheriff's Department took possession of the photograph entitled *Refugee* and later returned it to Narkiewicz-Laine.  None of the other objects identified by Narkiewicz-Laine as his property at that location were taken by the Sheriff's Department at that time and none of them have been returned to him since.

11

55.     On or about August 16, 2011, Narkiewicz-Laine was informed by the Galena Police Department that a portfolio of original drawings (the "Found Drawings") created by Narkiewicz-Laine and, in some cases, signed by him had been located amongst a group of discarded items at an unspecified location in Galena.  The Found Drawings had been stored in the Premises.  The Found Drawings were thereafter returned to Narkiewicz-Laine by the Galena Police Department.

**Narkiewicz-Laine's Valuable Artworks**

56.     Among the items removed by defendants from the Premises are many original works of art created by Narkiewicz-Laine over his lifetime, including paintings, drawings, and unique or limited edition photographs made solely for exhibition purposes.  A schedule of some of those works by title, date of creation and exhibition history which have been identified to date is annexed hereto as Exhibit A.

57.     Narkiewicz-Laine owns all copyright interest in and to each of the works on Exhibit A hereto and has not transferred title in and to any of those works.

58.     Many of these original works of art were large paintings created in oil, acrylic or mixed media on canvas or wood, as well as unique or limited edition photographs made for exhibition purposes.

59.     Many of these original works of art have been exhibited in museum and gallery exhibitions open to the public in various institutions both in the United States and abroad.

60.     Many of these original works of art have been the subject of favorable published comment and criticism in the United States and abroad.

61.     Some of these original works of art have been offered for sale to the public.

62.     Also among the property owned by Narkiewicz-Laine and removed by defendants from the Premises are:  (i) other original works of art created by Mr. Narkiewicz-Laine; (ii) a large

DWT 18252953v219984394v1 0092623-000001

number of sketches, unfinished works, unexhibited works, studies, notes and sketch books created by Narkiewicz-Laine; (iii) a number of paintings by Eve Garrison; (iv) a series of Greek icons; (v) a collection of rare rural implements; (vi) a collection of masks; (vii) the accumulated documentation of Narkiewicz-Laine's creative life, including but not limited to preparatory and raw materials for works of art; rolls of canvas and stretchers for paintings; photographs; receipts and invoices; exhibition reviews; correspondence; and (viiviii) a significant art reference library.

63.     Among the items removed by defendants from the Premises are multiple works owned or consigned to the safekeeping of the Museum and being stored there at the request of the Museum and with Narkiewicz-Laine approval prior to or subsequent to exhibition at another location, or because they were undergoing examination for purposes of restoration and/or repair.

## COUNT I

### Violation of the Right of Integrity (Destruction)
### Under The Visual Artists Rights Act
### (17 U.S.C. § 106A(A)(3)(B))

64.     Plaintiff Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 63 set forth hereinabove, as if the same were fully set forth herein.

65.     Plaintiff Narkiewicz-Laine's claim arises under 17 U.S.C. § 106A(a)(3)(B) for violation of his right of integrity (Destruction) in multiple Works of Visual Art as defined in 17 U.S.C. § 101.

66.     Defendants removed, without authorization, multiple Works of Visual Art as defined in that Act, which had been stored in the Premises pursuant to the Lease Agreement.

67.     Despite Narkiewicz-Laine's demand for return of all the Works of Visual Art removed by defendants from the Premises, defendants have failed to return any of them and claim that they have been destroyed.

68.     Defendants intentionally and/or grossly negligently destroyed the said Works of Visual Art by causing them to be dumped in a landfill and/or by other means presently unknown to plaintiff Narkiewicz-Laine.

69.     Said Works of Visual Art were created by Narkiewicz-Laine and were not works for hire.

70.      Narkiewicz-Laine did not transfer title to any said Works of Visual Art created prior to 1990.

71.     Said Works of Visual Art have been publicly exhibited in the United States and/or abroad and have received critical acclaim in magazines, newspapers, and/or are considered by experts in the field of modern art to be works of recognized stature.

72.      The destruction of said Works of Visual Art of recognized stature by defendants without authorization constitutes a violation of Narkiewicz-Laine's right of integrity.

73.     As a direct and proximate result of defendants' actions, Mr. Narkiewicz-Laine has been damaged in an amount to be determined at trial.

 WHEREFORE, plaintiff Christian Narkiewicz-Laine requests judgment against defendants Kevin C. ~~Doyle, Michael W.~~ Doyle, Pamela Doyle, John T. Doyle Trust A, John T. Doyle Trust B, as follows:

(i)     preliminarily and permanently enjoining and restraining the defendants and each of them, and all of those acting under the direction or pursuant to their control, from destroying any of the Works of Visual Art of recognized stature created by Christian Narkiewicz-Laine now or hereinafter in their possession; and

DWT 18252953v2 19984394v1 0092623-000001

(ii)  for an award to Christian Narkiewicz-Laine of actual or statutory damages in an amount to be determined at trial, plus the attorneys fees, costs and disbursements incurred in this action; and

(iii)  for an award of pre-judgment interest according to law; and

(iv)  for such other relief as the Court may deem just and proper.

Plaintiff Narkiewicz-Laine demands trial by jury.

## COUNT II

### Violation of the Right of Integrity (Modification)
### Under The Visual Artists Rights Act
### (17 U.S.C. § 106A(A)(3)(A))

74.  Plaintiff Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 63 set forth hereinabove, as if the same were fully set forth herein.

75.  Plaintiff Narkiewicz-Laine's claim arises under 17 U.S.C. § 106A(a)(3)(A) for violation of his right of integrity (Modification) in *Refugee*, Works of Visual Art as defined in 17 U.S.C. § 101.

76.  Without authorization, defendants removed *Refugee*, which had been stored in the Premises pursuant to the Lease Agreement.

77.  Despite Narkiewicz-Laine's demand for return of all the Works of Visual Art removed by defendants from the Premises, defendants have failed to return any of them.

78.  On information and belief, defendants intentionally caused *Refugee* to be thrown into a dumpster to be carted to a landfill and/or removed them by other means presently unknown to plaintiff Narkiewicz-Laine.

79.  Narkiewicz-Laine has retrieved *Refugee* from a third party.

15

80.  *Refugee* is damaged and can no longer be exhibited.  This damage constitutes a distortion or mutilation of *Refugee* which is prejudicial to Narkiewicz-Laine's honor or reputation

81.  On information and belief, the damage to *Refugee* was not caused by the third-party seller who retrieved it from the dumpster, but by defendants either prior to, or in the act of, intentionally throwing it in the dumpster.

82.  On information and belief, the damage to *Refugee* would not have occurred but for the intentional actions of defendants in discarding *Refugee* in the dumpster.

83.  *Refugee* was created by Narkiewicz-Laine and was not a work for hire.

84.  *Refugee* was created after 1990.

85.  The intentional mutilation or other modification of *Refugee* by defendants constitutes a violation of Narkiewicz-Laine's right of integrity.

86.  As a direct and proximate result of defendants' actions, Mr. Narkiewicz-Laine has been damaged in an amount to be determined at trial.

87.  On information and belief, other Works of Visual Art which had been stored in the Premises and which have not yet been located, may have been modified or mutilated by defendants in violation of 17 U.S.C. § 106A(a)(3)(A).

WHEREFORE, plaintiff Christian Narkiewicz-Laine requests judgment against defendants Kevin C. ~~Doyle, Michael W.~~ Doyle, Pamela Doyle, John T. Doyle Trust A, John T. Doyle Trust B, as follows:

(i)  preliminarily and permanently enjoining and restraining the defendants and each of them, and all of those acting under the direction or pursuant to their control, from modifying or mutilating any of the Works of Visual Art created by Christian Narkiewicz-Laine now or hereinafter in their possession; and

16

(ii)     for an award to Christian Narkiewicz-Laine of actual or statutory damages in an amount to be determined at trial, plus the attorneys fees, costs and disbursements incurred in this action; and

(iii)     for an award of pre-judgment interest according to law; and

(iv)     for such other relief as the Court may deem just and proper.

Plaintiff Narkiewicz-Laine demands trial by jury.

## COUNT III

### Violation of the Forcible Entry and Detainer Act
### (735 ILCS 5/9-101, *et seq.*) (Trespass)

88.     Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 63 set forth hereinabove, as if the same were fully set forth herein.

89.     Defendants' actions set forth herein above constitute a trespass and violation of the Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et. seq*.

90.     In 2004, Narkiewicz-Laine entered into a Lease Agreement with the Doyle family on behalf of the John Doyle Trust, which lease remained valid and in force for the entire period of the events set forth herein.

91.     The extent and bounds of the Premises were specifically a second floor Premises in the Property, owned and controlled by the Doyle family and/or the John Doyle Trust, at 125 South Main Street, Galena, Illinois.

92.     The Lease Agreement established a month-to-month tenancy. Rent was set at $50 a month and remained at that price throughout the term of the lease. Payment was to be by check payable to "John Doyle Trust," mailed to, or deposited by hand at, Galena State Bank & Trust in Galena.

17

93.     After initially paying the rent monthly, Narkiewicz-Laine began paying the rent less frequently in larger amounts to cover several months at a time.  Defendants explicitly accepted and/or ratified this payment method by email and by continuing to cash the checks when they arrived, and by not informing Narkiewicz-Laine that they objected to same or seeking termination of the Lease Agreement as a consequence.

94.     Defendants knew that Narkiewicz-Laine had a valid Lease Agreement for the Premises.

95.     Defendants had contact information for Mr. Narkiewicz-Laine in the form of an email address and a telephone number and/or knowledge of his place of work.

96.     95.  On or about July 20, 2010, defendants evicted Narkiewicz-Laine from the Premises and retained for themselves and/or caused to be destroyed the entire contents of the Premises.

97.     96.  Defendants did not provide any written notice to Narkiewicz-Laine that they intended to evict him from the Premises, as required by 735 ILCS 5/9-207.

98.     97.  Defendants did not file or serve an eviction complaint and or claim for rent with the Circuit Clerk's office in Galena, as required by Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-106-07.

99.     98.  Defendants did not obtain an order of eviction or a judgment for rent from the County Court in Galena, as required by 735 ILCS 5/9-101 *et seq*.

100.    99.  On demand from Narkiewicz-Laine, defendants have returned some of the contents of the Premises and claim that what they have returned is the only property taken from the Premises that is still in their possession, custody or control.

101. ~~100.~~ Defendants have refused to return the remainder of the property taken from the Premises, claiming that they caused that property to be destroyed, nor have they compensated Narkiewicz-Laine for the value of the said items.

102. ~~101.~~ The above actions are a trespass in violation of the Forcible Entry and Detainer Act and have caused Narkiewicz-Laine damages in an amount to be determined at trial.

103. Defendants acted willfully and with gross disregard for the rights of Narkiewicz-Laine and hence are liable for punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff Christian Narkiewicz-Laine requests judgment against defendants Kevin C. ~~Doyle, Michael W.~~ Doyle, Pamela Doyle, John T. Doyle Trust A, John T. Doyle Trust B, as follows:

(i)     for an award of damages to Christian Narkiewicz-Laine in an amount to be determined at trial; and

(ii)    for an award of pre-judgment interest according to law; and

(iii)   for such other relief as the Court may deem just and proper.

Plaintiff Narkiewicz-Laine demands trial by jury.

## COUNT IV

### Conversion

104. ~~102.~~ Plaintiff Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through and including 63 set forth hereinabove, as if the same were fully set forth herein.

105. ~~103.~~ Defendants removed, without authorization, multiple items of tangible personal property owned by Narkiewicz-Laine or consigned to his safekeeping and stored in the Premises, including (1) paintings, drawings, photographs, sculptures, audiovisual works, sketches,

19

studies, unfinished works, components of art installations and other artwork created by Narkiewicz-Laine and others which do not qualify as Works of Visual Art of recognized stature as defined by 17 U.S.C. § 101 *et. seq.*; (2) equipment owned and used by Narkiewicz-Laine in the preparation, preservation, and documentation of his art and professional activities; (3) personal records, including tax records; (4) a significant library of books for art research; and (5) other personal effects owned by Narkiewicz-Laine.

106. 104. Plaintiffs later returned to Narkiewicz-Laine a small number of his personal effects but some had sustained damage since they had been removed from the Premises.

107. 105. Despite Narkiewicz-Laine's several demands to defendants to return all the items of his tangible personal property removed by defendants from the Premises, they have failed and refused to do so.

108. 106. Narkiewicz-Laine has been deprived of said tangible personal property by defendants for a considerable period of time.

109. 107. Narkiewicz-Laine has a right to immediate possession of said tangible personal property.

110. 108. Defendants have therefore converted said tangible personal property belonging to Narkiewicz-Laine.

111. Defendants had contact information for Mr. Narkiewicz-Laine in the form of an email address and a telephone number and/or knowledge of his place of work.

112. 109. As a direct and approximate result of defendants' intentional actions, Mr. Narkiewicz-Laine has been damaged in an amount to be determined at trial.

113. Defendants acted willfully and in gross disregard for the rights of Narkiewicz-Laine and hence are liable for punitive damages in an amount to be determined at trial.

20

WHEREFORE, plaintiff Christian Narkiewicz-Laine requests judgment against defendants Kevin C. ~~Doyle, Michael W.~~ Doyle, Pamela Doyle, John T. Doyle Trust A, John T. Doyle Trust B, as follows:

(i)      for an award of damages to Christian Narkiewicz-Laine in an amount to be determined at trial; and

(ii)     for an award of pre-judgment interest according to law; and

(iii)    for such other relief as the Court may deem just and proper.

Plaintiff Narkiewicz-Laine demands trial by jury.

**COUNT V**

**NEGLIGENCE
(IN THE ALTERNATIVE)**

114.  ~~110.~~ Narkiewicz-Laine repeats and realleges each and every allegation of paragraphs 1 through 63 set forth hereinabove, as if the same were fully set forth herein.

115.  ~~111.~~ Defendants removed multiple items of tangible personal property owned by Narkiewicz-Laine or consigned to his safekeeping and stored in the Premises, including (1) paintings, drawings, photographs, sculptures, audiovisual works, sketches, studies, unfinished works, components of art installations and other artwork created by Narkiewicz-Laine and others; (2) equipment owned and used by Narkiewicz-Laine in the preparation, preservation, and documentation of his art and professional activities; (3) personal records, including tax records; (4) a significant library of books for art research; and (5) other personal effects owned by Narkiewicz-Laine.

116.  ~~112.~~ Defendants retained some of Narkiewicz-Laine's tangible personal property.

DWT 18252953v219984394v1 0092623-000001

117. ~~113.~~ On Narkiewicz-Laine's demand, defendants later returned to Narkiewicz-Laine some of his tangible personal property but some of that tangible personal property had been damaged since defendants had removed it from the Premises.

118. ~~114.~~ Defendants owed Narkiewicz-Laine a duty of reasonable care with respect to his tangible personal property while in their possession from the time they removed it from the Premises to the time they returned it to Narkiewicz-Laine.

119. ~~115.~~ Defendants did not take reasonable care in safeguarding the tangible personal property that was returned to Narkiewicz-Laine.

120. ~~116.~~ Defendants' failure to take reasonable care is the proximate cause for the damage to said tangible personal property.

121. ~~117.~~ As a direct and approximate result of defendants' actions, Mr. Narkiewicz-Laine has been damaged in an amount to be determined at trial.

122. Defendants acted willfully and in gross disregard for the rights of Narkiewicz-Laine and hence are liable for punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff Christian Narkiewicz-Laine requests judgment against defendants Kevin C. ~~Doyle, Michael W.~~ Doyle, Pamela Doyle, John T. Doyle Trust A, John T. Doyle Trust B, as follows:

(i)     for an award of damages to Christian Narkiewicz-Laine in an amount to be determined at trial; and

(ii)     for an award of pre-judgment interest according to law; and

(iii)     for such other relief as the Court may deem just and proper.

Plaintiff Narkiewicz-Laine demands trial by jury.

Dated: New York, New York
~~January 3,~~ July 26, 2012

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/Christopher
Robinson _____ ~~_____~~
    Christopher J. Robinson
    Marcia B. Paul
1633 Broadway 27th floor
New York, New York 10019
(212) 489-8230
*Primary and Trial Counsel for Plaintiff*


James H. Wolf
James M. Wolf
WOLF & TENNANT
33 North Dearborn, suite 800
Chicago, Illinois 60602
(312) 739-0300.

*Local Counsel for Plaintiff*

Document comparison by Workshare Compare on Thursday, July 26, 2012
2:16:46 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DWTDOCS/DWT/18252953/2 |
| Description | #18252953v2<DWT> - Narkiewicz Amended Complaint |
| Document 2 ID | interwovenSite://DWTDOCS/DWT/19984394/1 |
| Description | #19984394v1<DWT> - Narkiewicz Second Amended Complaint |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 30 |
| Deletions | 42 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 72 |