**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWITZ-LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 11 CV 1826 |
| | ) | |
| KEVIN C. DOYLE, MICHAEL W. DOYLE., | ) | The Honorable Judge Philip G. Reinhard |
| PAMELA DOYLE, JOHN T DOYLE | ) | |
| TRUST A, JOHN T. DOYLE TRUST B, | ) | Magistrate Judge P. Michael Mahoney |
| and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

**NAMED DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Robert S. Minetz, IRDC No. 1925563
Saskia Nora Bryan, IRDC No. 6255682
LATIMER LeVAY FYOCK LLC
55 West Monroe Street, Suite 1100
Chicago, Illinois 60603
(312) 422-8000
(312) 422-8001 (Fax)


David P. Faulkner
FAULKNER LAW FIRM
6832 Stalter Drive
Rockford, Illinois 61108
(815) 963-8050

# TABLE OF CONTENTS

**Page**

I.     FACTUAL BACKGROUND ...................................................................... 1

    A.    The Oral Lease Agreement ............................................................ 1

    B.    Plaintiff's Payment History ........................................................... 1

    C.    Condition of the Premises .............................................................. 4

    D.    Further Disputes ............................................................................ 5

II.    ARGUMENT .......................................................................................... 8

    A.    Summary Judgment Standard ........................................................ 8

    B.    Conversion .................................................................................... 9

        1.    *There is substantial, credible evidence that Plaintiff abandoned the items in the Premises, in which case he was not entitled to immediate possession of those items.* ................................................. 10

        2.    *Plaintiff's evidence of non-abandonment relies, in part, on Plaintiff's own avowed testimony, and the Doyles should be given the opportunity to attack the credibility of his testimony in accordance with the Federal Rules of Evidence.* ................................. 14

    C.    Forcible Entry and Detainer Act .................................................. 16

III.    CONCLUSION ...................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page**

*Alexander v. Wisconsin Dept. of Health & Family Serv.,*
    263 F.3d 673 (7th Cir.2001) ................................................................................................... 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505 (1986) ........................................................................... 8

*Arnett v. Myers,*
    281 F.3d 552 (6th Cir. 2002) ........................................................................................ 8

*Camelback Properties v. Phoenix Ins. Co.,*
    No. 10 C 01467, 2012 WL 32965 (N.D. Ill. Jan. 6, 2012) ............................. 8

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548 (1986) ........................................................................... 8

*Cirrincione v. Johnson,*
    184 Ill.2d 109 (Ill. 1998) ............................................................................................. 9

*Dobsons, Inc. v. Oak Park National Bank,*
    86 Ill. App. 3d 200 (1st Dist. 1980) ....................................................................... 16

*Fortech, LLC v. R.W. Dunteman Co., Inc.,*
    366 Ill. App. 3d 804 (1st. Dist. 2006) ....................................................... 9, 12, 14

*GMAC, LLC, v. Hillquist,*
    652 F. Supp. 2d 908 (N.D. Ill. 1009) ........................................................................ 9

*Hall v. Sterling Park Dist.,*
    Nos. 08 C 50116, 09 C 50146, 2011 WL 1748710 (N.D. Ill. May 4, 2011.) ............... 8

*Hemsworth v. Quotesmith.com, Inc.,*
    476 F.3d 487 (7th Cir. 2007) ....................................................................................... 8

*Hendle v. Stevens,*
    224 Ill. App. 3d 1046 (2nd Dist. 1992) ................................................................... 10

*McBride v. Hawthorne,*
    268 Ill. 456 (1915) ...................................................................................................... 10

*McGreal v. Ostrov,*
    368 F.3d 657 (7th Cir. 2004) ..................................................................................... 15

*Michael v. First Chicago Corp.,*
  139 Ill. App. 3d 374 (2nd Dist. 1986) ............................................................. 10

*Paset v. Old Orchard Bank & Trust Co.,*
  62 Ill. App. 3d 534 (1st Dist. 1978) ............................................................. 10

*People v. Zych,*
  186 Ill.2d 267 (1999) ............................................................. 10

*Perry v. Evanston Young Men's Christian Ass'n,*
  92 Ill. App. 3d 820 (1st Dist. 1981) ............................................................. 17

*Pfizer, Inc. v. International Rectifier Corp.,*
  538 F.2d 180 (8th Cir.1976), *cert. denied,* 429 U.S. 1040 (1977) .................... 15

*Pieszchalski v. Oslager,*
  128 Ill. App. 3d 437 (5th Dist. 1984) ............................................................. 10

*Row v. Home Savings Bank,*
  306 Mass. 522, 29 N.E.2d 552 (Mass. 1940) ................................... 12, 13, 14

*Saab Cars USA, Inc. v. United States,*
  434 F.3d 1359 (Fed. Cir. 2006) ............................................................. 8

*Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.,*
  611 F.3d 339 (7th Cir.2010) ............................................................. 9

*Stumph v. Thomas & Skinner, Inc.,*
  770 F.2d 93 (7th Cir.1985) ............................................................. 15

*Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be SB Lady Elgin,*
  755 F.Supp. 213 (N.D. Ill. 1990) ............................................................. 10

**Statutes**

735 ILCS §5/9-101, *et. seq.* ............................................................. 16

**Other Authorities**

Fed. R. Civ. P. 56(c) ............................................................. 8

Fed. R. Evid. 609(a)(2) ............................................................. 15-16

Named Defendants[1], Kevin C. Doyle, Pamela Doyle, the John T. Doyle Trust A, and the John T. Doyle Trust B[2], by their undersigned attorneys, for their Response to the Motion for Partial Summary Judgment of Plaintiff, Christian K. Narkiewitz-Laine, state as follows:

## I.    FACTUAL BACKGROUND

### A.    The Oral Lease Agreement

The Doyles agree that, in early 2004, they did enter into an oral agreement with Plaintiff to lease the second-floor room of a building located at 125 S. Main in Galena (the "Premises"). (*see,* Defendants' Response to Plaintiff's Statement of Facts and Additional Facts (hereinafter "Def. Stmt."), ¶¶2, 5.) However, the Doyles dispute that the rental agreement was for only $50.00 per month. Rather, as part of the rental obligation, the Plaintiff was to pay for the utilities that serviced the Premises – namely, natural gas and electricity. (Def. Stmt., ¶¶7-9, 44.) Plaintiff characterizes this obligation as a "responsibility he assumed," not as an additional term of the oral lease. This is incorrect. Plaintiff did not have the option of paying for the utilities, he was required to. (Def. Stmt., ¶44.)

### B.    Plaintiff's Payment History

The Doyles also agree that Plaintiff initially paid the $50.00 consistently each month, then began to pay several months at a time, often in arrears. (Def. Stmt., ¶¶12, 45.) However, this action on the part of the Plaintiff was not acceptable to the Doyles, particularly when he allowed several months to lapse without payment. In July of 2007, Pamela Doyle sent Plaintiff an email complaining that the Doyles had not received payment "since February," or for approximately five months. (Def. Stmt., ¶46.) Plaintiff responded by paying the past due amount, plus the rent for August, in a lump sum check dated July 13, 2007. (Def. Stmt., ¶46.)

---

[1] The Named Defendants do not include the defendants Plaintiff terms "John Does 1-5".
[2] Michael W. Doyle was dismissed as a party defendant by agreed Stipulation. (Dkt. 48.)

Page 1 of 18

However, in 2008, Plaintiff again fell behind. Pamela Doyle, in an email dated June 26, 2008, asked for past due payments beginning in January of that calendar year. Plaintiff responded by sending a check for the full year which was dated July 1, 2008. (Def. Stmt., ¶47.) In both instances, Plaintiff never communicated further with Pamela or any other Defendant – he sent a check and nothing more was said. (Def. Stmt., ¶48.)

In both instances, the pattern is clear: Pamela Doyle sent an email when Plaintiff was *in arrears*. Even though Plaintiff responded by paying both the arrearage and some portion of future rent, he was still violating the terms of the lease by not paying the rent *when due*. In addition, in both instances, Plaintiff responded relatively quickly to the demand for payment. In 2007 and 2008 he paid by a check dated within a week of the email. (Def. Stmt., ¶48.)

However, in 2009, this pattern abruptly changed.

On April 8, 2009, Pamela Doyle again emailed the Plaintiff, stating that they had not received any rent since December of the previous year. (Def. Stmt., ¶49.) However, on this occasion, the Doyles did not receive any payment in response. In fact, Plaintiff did not respond to the email, did not deliver any payment, and did not communicate in any fashion with the Doyles for all of 2009. (Def. Stmt., ¶51.) Moreover, he never paid any rent whatsoever for the entire 2009 calendar year. (Def. Stmt., ¶52.)

Plaintiff attempts to counteract this evidence by claiming that he mailed a payment for the 2009 rent from Greece in September of 2009. Plaintiff attaches a purported "receipt" for this alleged mailing. (Def. Stmt., ¶¶15, 53.) There are several issues with this evidence.

First, Plaintiff's payment does not match his previous pattern of responding to an email demand within approximately a week. Pamela Doyle asked about payment in early April; Plaintiff's purported receipt and check are dated in early September. (Def. Stmt., ¶49, 15.)

Secondly, the Greek-translated receipt reflects *nothing* about the purported contents of the envelope, nor the address to whom it was sent. The receipt is also no proof of delivery, merely a record that purports to show a mailing. (Def. Stmt., ¶15.) Finally, and most importantly, the check at issue was never cashed. (Def. Stmt., ¶¶16, 53.)

Plaintiff claims that he was unaware that this check was not cashed until mid-2010. (Def. Stmt., ¶53.) He complains that "the defendants never contacted me to let me know that they had not received my rent payment for 2009." (Def. Stmt., ¶16, Narkiewicz-Laine Dec., ¶18.) This is patently untrue. Pamela Doyle contacted Plaintiff in April of 2009 to tell him exactly that fact. (Def. Stmt., ¶¶49-50.)

Moreover, Plaintiff reasonably should have known that his check was not cashed. Unlike the Doyles, who could not possibly have known that Plaintiff supposedly sent them a check that they never actually received, the Plaintiff had full access to the information that his check was never cashed – it was drawn on his account, with his money. (Def. Stmt., ¶53.) Plaintiff specifically conceded that his bank statement would have revealed to him that this check had not cleared the account, that it therefore had not been cashed by the Doyles, and the rent remained unpaid. (Def. Stmt., ¶53.) The idea that Plaintiff "didn't know" that he had not paid rent for all of 2009 is so implausible as to be ridiculous.

In addition, Plaintiff attempts to paint Pamela Doyle's 2009 email as an "explicit ratification" of his late, lump payments of rent, a characterization that stretches credibility. (Def. Stmt., ¶14.) Looking at the email Plaintiff refers to, Pamela Doyle does reference the fact that Plaintiff has previously paid rent in a lump sum, but there is no explicit statement that this behavior was acceptable *as to any past due amounts*. (Def. Stmt., ¶49.) To the contrary, this email specifically demands one of two actions from Plaintiff: (a) to "make arrangements" with

Pamela as to how Plaintiff would like to pay the rent; or (b) "at a minimum, bring the rent current through April of 2009." (Def. Stmt., ¶50.) Plaintiff, however, *did neither of these two things*.

Instead, Plaintiff claims that he waited for an additional five months, then allegedly sent a lump sum payment through a post office in Greece that *was never actually cashed*. (Def. Stmt., ¶¶15-16.) Plaintiff did not contact Pamela to make arrangements, nor did he pay the past-due amount, nor did he even attempt to pay any rent for the next five months, nor finally, did he actually pay any rent whatsoever for all of 2009. (Def. Stmt., ¶¶51-52.)

### C.    Condition of the Premises

In early 2010, Kevin Doyle entered into the Premises in anticipation of selling the building. (Def. Stmt., ¶55.) He found a space that was extremely cold and dark. Neither the lights nor the heat appeared to be on. (Def. Stmt., ¶55.)

The oral agreement to lease the Premises included payment of the utilities that services the space, which were natural gas and electricity. (Def. Stmt., ¶44.) However, sometime in 2009, the Plaintiff decided that he no longer wanted to pay for electricity, and so he ceased those payments and the power was disconnected. (Def. Stmt., ¶56.) This action on his part was not known to the Doyles, and Plaintiff specifically never advised them of his decision. (Def. Stmt., ¶56.) Yet this was not his decision to make, as the terms of his lease required him to pay for these costs. (Def. Stmt., ¶44.)

Moreover, the Plaintiff was mistaken in his belief that he did not need electric power for the heat to work. Although the heating system was powered by natural gas, the fan mechanism for the forced-air furnace is powered by electricity. As a result, even if the gas was on, the furnace would not operate absent electrical power, and the space would remain unheated. (Def.

Stmt., ¶57.)

Therefore, when Kevin Doyle first entered the Premises in early 2010, he walked into a very cold, dark space with no heat or light, despite the fact that it was the Plaintiff's obligation to maintain and pay for the utilities that serviced the space. Kevin Doyle also found Plaintiff's items to be dusty, dirty, damaged, and, in some cases, completely unusable – such as the painting supplies that had hardened. (Def. Stmt., ¶¶58-59.) Other individuals who walked through the space, including independent witnesses, found the same condition. (Def. Stmt., ¶60.) And of course, Plaintiff had not paid rent in over a year, and had not responded to the email from Pamela Doyle requesting rent. (Def. Stmt., ¶¶51-52.)

Kevin Doyle attempted to contact Plaintiff on three occasions in 2010. He called the number he had for Plaintiff twice, and there was no answer. (Def. Stmt., ¶64.) On the third attempt, he left a message on the answering machine. (Def. Stmt., ¶65.) He did not hear back from the Plaintiff. (Def. Stmt., ¶65.)

### D.    Further Disputes

The Doyles do not contest the facts regarding their removal of Plaintiff's items from the Premises. There are, however, other areas of serious disagreement with Plaintiff's version of events.

The first is Plaintiff's characterization of Michael Doyle's testimony. Michael Doyle is a co-Trustee of the two defendant trusts, and brother to Kevin Doyle. (Def. Stmt., ¶3.) He testified that he saw the contents in the Premises in early 2010, before the building was sold. (Def. Stmt., ¶61.)

Plaintiff has characterized Michael Doyle's testimony as follows:  (i) Michael assumed the property in the Premises had not been abandoned; and (ii) Michael believed that the

Page 5 of 18

purchasers of the building would "have to assume" the Plaintiff's lease. (Def. Stmt., ¶21.) But Michael Doyle did not testify at all about whether he believed the property to be abandoned. He also stated that he "never gave … a thought" as to whether the building was being sold with Plaintiff as an existing tenant. (Def. Stmt., ¶61.) More importantly, Michael's testimony was premised on an altogether different assumption: he testified that "I was under the understanding that [Plaintiff] had rented that space; and *if there was an agreement,* then the buyer would have to be honoring that." (Def. Stmt., ¶62.)

Ultimately, Michael Doyle's beliefs and impressions are not material facts to this inquiry, because the question of whether Plaintiff abandoned the property is not based on the Doyles' subjective beliefs. More importantly, Michael Doyle's testimony on this issue consists of nothing more than answers to hypothetical questions. Michael Doyle did not know about the Plaintiff's long-standing failure to pay rent. He did not take any close notice of the items in the property. He did not know about, and was not involved in, the removal of the items from the Premises. (Def. Stmt., ¶63.) The "assumptions" that Plaintiff tries to tie his testimony to are all premised on facts that Michael himself admitted he was not aware of, such as whether Plaintiff still had a valid agreement to rent the space. As a result, Michael Doyle's testimony is not relevant to the Plaintiff's Motion, nor does it provided the negative inference Plaintiff claims.

The second dispute regards the lionization of Plaintiff's career and work. In several instances Plaintiff refers to himself as "an accomplished artist," and that the items removed were "valuable art." (Def. Stmt., ¶¶1, 6.) Again, the question of whether Plaintiff's one-sided description of himself and what he created is not a material fact relevant to the disposition of this Motion. However, the question of whether the items removed had any value is pertinent.

Plaintiff was an "artist" only inasmuch as he took photographs and painted pictures. He

has never sold, or "considered" selling, any artwork. (Def. Stmt., ¶66.) He has, apparently, spoken to galleries about the possibility of marketing and selling pieces, but "nothing ever came of it." (Def. Stmt., ¶67.) And there is no testimony or evidence at this time, short of the Plaintiff's own, that any item in the Premises had any value or worth beyond the sentimental. Plaintiff has never had any of the purported artwork appraised, and did not even bother to obtain any insurance on his property. (Def. Stmt., ¶¶68-69.) In addition, there is a significant question about Plaintiff's credibility, particularly as to his self-serving testimony, as Plaintiff is also a convicted felon, having pled guilty to obstruction of justice in 2003. (Def. Stmt., ¶70.)

Lastly, while the legal analysis of this matter will not necessarily hinge on the Doyle's perceptions, the fact is that there is a significant dispute about whether the Doyles had any intention of depriving the Plaintiff of property that he desired or wanted or cared about. The Doyles believed, in good faith and with no malice, that Plaintiff had simply left the property there, stopped paying rent, stopped paying the utilities, and had no further interest in keeping the items. (Def. Stmt., ¶¶52, 55, 58.) Plaintiff characterizes their actions differently, but there is significant evidence to show that the Doyles had absolutely no idea that they were depriving Plaintiff of anything – they reasonably believed that he had abandoned the property.

It is true that, had the Doyles followed the specific requirements of the Forcible Entry and Detainer Act, they could have ended this dispute before it began. For that, both Plaintiff and the Doyles are paying a heavy price in this litigation. However, judgment in favor of the Plaintiff at this juncture is still premature. There are too many contested issues of fact, and even the facts that are uncontested can lead to different interpretations and resulting different outcomes. As a result, summary judgment should be denied, and this matter should instead progress to trial.

## II.   ARGUMENT

### A.   Summary Judgment Standard

Summary judgment turns on the question of whether the facts presented by the parties create a genuine issue of material fact. A genuine issue of material fact exists when, viewing all evidence in a light most favorable to the non-movant and drawing all justifiable inferences in the non-movant's favor, the court finds that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *see also*, *Camelback Properties v. Phoenix Ins. Co.,* No. 10 C 01467, 2012 WL 32965 (N.D. Ill. Jan. 6, 2012). A court may only grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 489–90 (7th Cir. 2007).

When considering a motion for summary judgment,

> the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. [*Hemsworth*] at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. *Id.* If the moving party bears the burden of persuasion at trial, that party must support its motion with credible evidence to show that, even in the absence of an adequate response by the nonmovant, it is entitled to judgment as a matter of law. *Saab Cars USA, Inc. v. United States,* 434 F.3d 1359, 1368 (Fed. Cir. 2006); *Arnett v. Myers,* 281 F.3d 552, 562 (6th Cir. 2002); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548… (1986) (Brennan, J., dissenting) (The moving party "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial"). Moreover, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact by identifying with reasonable particularity the evidence upon which the party relies. *Hemsworth,* 476 F.3d at 489–90.

*Hall v. Sterling Park Dist.*, Nos. 08 C 50116, 09 C 50146, 2011 WL 1748710 (N.D. Ill. May 4, 2011.) Because this case is in federal court based on diversity jurisdiction and the claims at issue

Page 8 of 18

in the motion are founded in state law, the substantive law of Illinois applies. *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.,* 611 F.3d 339, 345 (7th Cir.2010).

**B.     Conversion**

Under Illinois law, "[t]o establish conversion, a plaintiff must show that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson,* 184 Ill.2d 109, 114 (Ill. 1998). The language in Illinois cases might rearrange the order of these elements, but they are always substantively the same. *See, e.g., Fortech, LLC v. R.W. Dunteman Co., Inc.,* 366 Ill. App. 3d 804, 809 (1st. Dist. 2006) ("to prove a claim of conversion, the plaintiff must show (1) a right in the property, (2) a right to the immediate possession of the property, (3) a deprivation of the right by the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant, and (4) a demand for possession of the property.")

Plaintiff need not just provide evidence of each of these elements. Since he is moving for summary judgment, he bears the burden of proving each of those elements as a matter of law. *GMAC, LLC, v. Hillquist,* 652 F. Supp. 2d 908, 916 (N.D. Ill. 1009) ("If the moving party bears the burden of persuasion at trial, that party must support its motion with credible evidence to show that, even in the absence of an adequate response by the nonmovant, it is entitled to judgment as a matter of law.")

Furthermore, to the extent there is evidence of a dispute of material fact as to any one of these elements, Plaintiff is not entitled to summary judgment, and the matter must instead be determined by a trier of fact. In this instance, Plaintiff cannot prevail on summary judgment for

conversion because he cannot show that there is no dispute of material fact that he was entitled to immediate possession of the Premises.

> **1.** ***There is substantial, credible evidence that Plaintiff abandoned the items in the Premises, in which case he was not entitled to immediate possession of those items.***

Abandonment is the "intentional relinquishment of a known right." *Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be SB Lady Elgin*, 755 F.Supp. 213, 214 (N.D. Ill. 1990); *Pieszchalski v. Oslager,* 128 Ill. App. 3d 437, 447 (5th Dist. 1984). Generally speaking, "property is abandoned when the owner, intending to relinquish all rights to the property, leaves it free to be appropriated by any other person." *Paset v. Old Orchard Bank & Trust Co.,* 62 Ill. App. 3d 534, 537 (1st Dist. 1978). Intention may be shown by act or words or both. *McBride v. Hawthorne*, 268 Ill. 456, 460 (1915).

Plaintiff, obviously, claims that he did not intend to abandon the property in the Premises, but that does not end the inquiry. Abandonment may and often must be determined on the basis of circumstantial evidence. *People v. Zych*, 186 Ill.2d 267, 280 (1999). Moreover, a finding of abandonment of property is a factual determination. *Zych*, at 278. The facts that have been adduced in discovery show that Plaintiff engaged in a series of actions that could support a finding that he abandoned the property. If property is considered abandoned, then a finder of that property is "entitled to keep the abandoned property." *Hendle v. Stevens,* 224 Ill. App. 3d 1046, 1056 (2nd Dist. 1992); *Michael v. First Chicago Corp.,* 139 Ill. App. 3d 374, 382 (2nd Dist. 1986). As a result, if the facts adduced thus far could be reasonably interpreted as finding that Plaintiff abandoned the property, there can be no summary judgment.

The facts that evidence abandonment are as follows:

- Plaintiff failed to pay rent for the entire year of 2009. (Def. Stmt., ¶52.)

- Defendant Pamela Doyle notified Plaintiff that they had not received any rent for the year 2009 in April of 2009. (Def. Stmt., ¶49.)

- Plaintiff claims he wrote a check in September of 2009 (five months after the notice from Pamela Doyle) for the 2009 rent, but this check was never cashed or cleared Plaintiff's bank account, a fact which Plaintiff is reasonably expected to know. (Def. Stmt., ¶¶15-16, 54.)

- Despite the payment for the rent of 2009 never being deducted from Plaintiff's bank account, Plaintiff made no effort to ascertain what happened to the purported check, and made no effort to contact the Doyles whom he reasonably knew had not actually received the 2009 rent from him. (Def. Stmt., ¶¶53-54.)

- Plaintiff failed to maintain payment of the utilities as was required under the lease beginning in 2009. (Def. Stmt., ¶¶44, 56.)

- Plaintiff did not advise the Doyles that he was turning off the electricity in the space. (Def. Stmt., ¶56.)

- Because Plaintiff ceased paying for electricity, the forced-air gas furnace, which distributes heat with an electrical-powered fan, did not run in the winter. Even though Plaintiff continued to pay for natural gas, the furnace would have been inoperable without electricity. (Def. Stmt., ¶57.)

- Without heat, the property was extraordinarily cold when Defendant Kevin Doyle first walked through in January of 2010. (Def. Stmt., ¶55.)

- Without electricity, there was barely any light in the Premises other than what came in through the windows, which in winter was sparse. (Def. Stmt., ¶55.)

- The items in the Premises were in disarray, damaged, disorganized, piled on the

floor and stacked against the walls. Several of the art supplies –such as paint – had hardened and dried and were unusable. (Def. Stmt., ¶¶58-60.)

- Plaintiff obtained no insurance for the items he stored in the Premises, despite his claims that they are or were extremely valuable. (Def. Stmt., ¶69.)

In the case of *Fortech v. R.W. Dunteman, cited infra,* the First District carefully analyzed and positively cited the matter of *Row v. Home Savings Bank,* 306 Mass. 522, 29 N.E.2d 552 (Mass. 1940). *Fortech,* at 816. While the *Fortech* court found its case distinguishable from the *Row* matter, the similarities between this case and *Row* are far more apparent, and, since *Row* was explored with approval by the First District, its principals are useful here.

In *Row,* the plaintiff sued a lender who had foreclosed on property in which she had previously been a tenant. After her tenancy expired, she was given permission from the owner of the property to continue to use the property as a place to write and store some of her belongings there. Her belongings consisted of two trunks and a suitcase, filled with personal items, photographs, films, clothing, and other ephemera. *Id.* at 523. She left these items in the building for a little over a year. After she ceased using the property as a place to write, she visited the property one additional time, but she did not pack up and take her belongings. *Id.* at 524.

During this time, the property was vacated by the owners, the lender foreclosed, and it subsequently entered into the building, changed the locks, and discarded all of the "debris" that was left in the property. *Row,* 306 Mass. at 524. This included the plaintiff's items. When the plaintiff then subsequently sued the mortgage lender for conversion of her items, the trial court found that "her acts gave the defendant's agent reason to believe that the property had been abandoned," and ruled in favor of the lender-defendant. *Id.* at 525. The Supreme Judicial Court of Massachusetts affirmed, but on different grounds, holding:

> Here the plaintiff had no right to continue to keep her property in the building. The defendant entered under its paramount right to the possession of the mortgaged building and land, free from the plaintiff's property. Its duty as to that property did not extend beyond reasonable conduct. The building had been vacant a long time. The defendant did not know to whom the property belonged, and consequently could not deliver it to the plaintiff. Its apparent worthlessness excused the defendant from searching for the owner.

*Row,* 306 Mass. at 526.

While the *Row* case includes certain facts that are distinguishable from the matter at hand, many of the facts and circumstance are analogous. Like the plaintiff in *Row,* who ceased her tenancy in 1932 but continued to use the space for more than a year thereafter (*Id.* at 523), Plaintiff had also not paid rent in over a year, despite having been sent an email reminder. (Def. Stmt., ¶¶49-52.) Plaintiff did not return the message left for him at the one telephone number Kevin Doyle had for him. (Def. Stmt., ¶65.) And the light and heat were off in the Premises, which was both an additional violation of the terms of the lease as well as a further indication that the property stored therein was worthless and had been abandoned. (Def. Stmt., ¶¶44, 55.)

It is sufficient, at this stage, to show that there are significant facts which would support a judgment in favor of the Doyles on their defense of abandonment. Ultimately, to prevail at trial, the Doyles would need to prove that the Plaintiff intentionally relinquished his rights in the property. But summary judgment should not be granted to the Plaintiff if the Doyles have sufficient evidence on which a judgment could be rendered in their favor.

This defense is not premised on the argument that the Doyles acted in good faith or that they reasonably perceived the Premises to be abandoned, although they did. (Def. Stmt., ¶¶58-59.) A conversion claim cannot be defended by the argument that a defendant was "reasonably … mistaken in thinking the facts to be such as would give him a legal right to the goods." *Row,* at 553. But based on the facts that are at issue – no rent payments for over a year, no utility

payments resulting in a freezing, dark space, and items covered in dust and piled on the floor or haphazardly in boxes – a reasonable trier of fact could find that Plaintiff *did, in fact,* abandon his property, not just that the Doyles reasonably believed that he did. (Def. Stmt., ¶¶52, 55, 58-60.)

Finally, the apparent lack of value of the property is a significant dispute of material fact that should preclude the award of summary judgment. In *Row,* the Court specifically noted that the plaintiff's property's "apparent worthlessness excused the defendant from searching for the owner," going on to say that "[n]o storage warehouse could be expected to receive worthless property, depending for payment upon a lien. The defendant could not be expected to contract for storage that probably would continue indefinitely." *Row,* at 526, *cited with approval in Fortech, LLC v. R.W. Dunteman,* 366 Ill. App. 3d. at 815-16. Even though the *Fortech* Court rejected the comparison of its case to *Row,* one of the facts the Court relied on as evidence that abandonment was not relevant to its case was that the converted property at issue therein "was used [by defendant]… instead of being 'discarded.'" *Fortech,* at 817. Here, in contrast, the property was admittedly discarded by the Doyles. (Def. Stmt., ¶¶27-29.)

The value of Plaintiff's property is, quite obviously, a highly contested issue of material fact in this matter. To the extent that Plaintiff's property is found, at trial, to be effectively worthless, that would be a material fact supporting the Doyle's defense of abandonment. Summary judgment, therefore, would be premature.

## 2. *Plaintiff's evidence of non-abandonment relies, in part, on Plaintiff's own avowed testimony, and the Doyles should be given the opportunity to attack the credibility of his testimony in accordance with the Federal Rules of Evidence.*

Abandonment is a defense that seeks, in some fashion, to do the impossible: prove that an individual had a specific intent (to relinquish rights in property) that that same individual is already avowing he did not have. As a result, trials in which abandonment is an issue often

consist of one side loudly proclaiming that he did not intentionally abandon anything, while the other side presents circumstantial evidence to belie the other side's direct testimony. The degree to which the individual testimony is credible is therefore a key issue.

Because Plaintiff must establish his credibility as a witness, this case is particularly ill-fitted to a summary determination. *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004), *citing, Alexander v. Wisconsin Dept. of Health & Family Serv.,* 263 F.3d 673, 681 (7th Cir. 2001) (cases involving questions of intent and credibility are inappropriate for summary judgment); *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985) ("'Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.'") (*quoting, Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040 (1977)). In matters in which the intent of the parties is contested, or where the credibility of testimony is at issue, the parties are entitled to have the trier of fact make those determinations, and summary judgment is not an option. *McGreal,* at 677.

This matter is no different. Plaintiff vehemently avers that he never intended to relinquish his rights in the property at issue. In light of the facts that circumstantially evidence abandonment which were set forth above, this issue is already a dispute of material fact for the jury. However, in this case there is an additional issue of fact for the jury: whether the Plaintiff's testimony can be considered credible even absent the facts contradictory to his position.

Plaintiff is a convicted felon, having pled guilty to obstruction of justice in 2003, in the United States District Court for the Northern District of Illinois. (Def. Stmt., ¶70.) Moreover, his crime, which he specifically admitted to, was based upon his personal acts of fraud and deception. (Def. Stmt., ¶70.) Evidence of this conviction is therefore admissible pursuant to Fed.

Rule of Evidence 609(a)(2), which provides that:

> **(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction: … **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement.

Plaintiff's claim is premised on his own testimony on two crucial points: that he did not intend to abandon the property, and that the property is and was valuable. On both of these issues Plaintiff is subject to cross-examination on his truthfulness and trustworthiness, and the evidence that he has previously engaged in acts of deception – specifically involving the use, transfer, and display of alleged "art" – is highly pertinent to the evaluation of his claims.

Because the Doyles have raised serious questions as to whether Plaintiff abandoned the property at issue, they should be afforded an opportunity to present evidence at trial that would cast doubt on the veracity of Plaintiff's own statements. Plaintiff's criminal history is relevant to this inquiry, as a trier of fact could find, in conjunction with the other circumstantial evidence or even apart from it, that Plaintiff is simply not credible when he claims that he never intended to abandon the property. As a result, summary judgment on the question of liability should not be granted.

### C. Forcible Entry and Detainer Act.

Section 9-01 of the Forcible Entry and Detainer Act provides:

> No person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he or she shall not enter with force, but in a peaceable manner.

735 ILCS §5/9-101.

The purpose of the Act is to adjudicate the right to possession. *Dobsons, Inc. v. Oak Park National Bank*, 86 Ill. App. 3d 200, 205 (1st Dist. 1980). "Accordingly, where an entry is made

by one having a paramount title and a right to immediate possession, in a peaceable and orderly manner, followed by no violence or intimidation, for the purpose of holding possession, no offense is committed under the statute." *Perry v. Evanston Young Men's Christian Ass'n,* 92 Ill. App. 3d 820, 823-24, (1st Dist. 1981), *citations omitted.*

In *Perry*, the First District considered the application of the Act in light of a dispute over the right to immediate possession. It held that:

> The general rule is that an action under a forcible entry and detainer statute may not be maintained where an individual's possession is terminated prior to the alleged wrongful entry, by lawful surrender or transfer, *by voluntary abandonment* or by eviction which has ripened into a peaceful possession on the part of the intruder. … Accordingly, Illinois courts have held that an invasion of an individual's actual possession of the premises at the time of the alleged entry is a prerequisite to recovery.

*Perry,* at 345, *emphasis added, citations omitted.*

Because the Doyles have set forth evidence to show that the Plaintiff abandoned the property, there is a dispute of material fact as to whether Plaintiff's lawful possession of the Premises had already been terminated. If termination had occurred due to abandonment, then Plaintiff had no right to possession of the Premises, and entry by the Doyles was not a violation of the Act. For the reasons set forth previously, the substantial amount of evidence supporting a finding of abandonment precludes entry of summary judgment on this claim.

## III. <u>CONCLUSION</u>

The Doyles have provided sufficient evidence to show that there is a material dispute of fact as to whether:  (i) Plaintiff was entitled to immediate possession of the Premises, and (ii) Plaintiff's lawful right to possession of the Premises had been terminated. Because these elements are required of Plaintiff to prevail on his claims of conversion and breach of the Forcible Entry and Detainer Act, respectively, Plaintiff is not entitled to summary judgment. The

matter should be set for completion of expert discovery, and trial.

The Plaintiff has demanded a trial by jury. He should get his wish. The jury should decide the factual disputes on both liability and damages. There should not be a bifurcated adjudication of these issues.

WHEREFORE, for the above and foregoing reasons, Defendants, Kevin C. Doyle, Pamela Doyle, the John T. Doyle Trust A, and the John T. Doyle Trust B, respectfully request that this honorable Court deny Plaintiff's Motion for Partial Summary Judgment, and grant any further relief the Court deems fair and necessary under the circumstances.

Respectfully submitted,

KEVIN C. DOYLE, PAMELA DOYLE
JOHN C. DOYLE TRUST A, and
JOHN D. DOYLE TRUST B, Defendants

By: ___/s/ Saskia Nora Bryan_____
One of their attorneys

Robert S. Minetz, ARDC No. 1925563
Saskia Nora Bryan, ARDC No. 6255682
LATIMER LeVAY FYOCK LLC
55 West Monroe Street, Suite 1100
Chicago, Illinois 60603
(312) 422-8000

David P. Faulkner
FAULKNER LAW FIRM
6832 Stalter Drive
Rockford, Illinois 61108
(815) 963-8050