**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN K. NARKIEWITZ-LAINE, | ) | |
|       Plaintiff, | ) | |
| v. | ) | Case No. 11 CV 1826 |
| KEVIN C. DOYLE, MICHAEL W. DOYLE, PAMELA DOYLE, JOHN T. DOYLE TRUST A, JOHN T. DOYLE TRUST B, and JOHN DOES 1-5, | ) | The Honorable Judge Philip G. Reinhard  Magistrate Judge P. Michael Mahoney |
|       Defendants. | ) | |

**NAMED DEFENDANTS' RESPONSE TO PLAINTIFF'S
RULE 56.1 STATEMENT OF FACTS
AND
STATEMENT OF ADDITIONAL FACTS THAT REQUIRE
DENIAL OF SUMMARY JUDGMENT**

Named Defendants, Kevin C. Doyle, Pamela Doyle, the John T. Doyle Trust A, and the John T. Doyle Trust B, hereby respond in accordance with Local Rule 56.1(3)(A)-(B) to the Statement of Facts submitted in this action by Plaintiff, Christian K. Narkiewitz-Laine, in support of his Motion for Partial Summary Judgment.

**RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

1. Christian Narkiewicz-Laine ("Narkiewicz-Laine") is an accomplished artist and the President and Director of The Chicago Athenaeum (the "Museum") with its main administrative offices in Galena, Illinois.

**RESPONSE**: Defendants contest that Plaintiff is an "accomplished artist". (Narkiewicz-Laine Dep. 148:11-149:4.) Defendants do not contest the remaining factual statements in paragraph 1.

2. From a date prior to 2004 until 2010, the John T. Doyle Trusts A & B (the "Trusts") owned a building at 123-125 S. Main Street in Galena (the "Building").

**RESPONSE**: Uncontested.

3. Kevin and Michael Doyle are brothers and co-trustees of the Trusts.

**RESPONSE**: Uncontested.

4. Pamela Doyle is the wife of Kevin Doyle.

**RESPONSE**: Uncontested.

5. In early 2004, Narkiewicz-Laine entered into an oral lease for the second floor of 125 S Main Street (the "Premises").

**RESPONSE**: Uncontested.

6. In 2004 and 2005, and from time to time over the period of the lease, Narkiewicz-Laine and Ioannis Karalias moved works of art and other personal possessions into the Premises.

**RESPONSE**: Defendants contest that Plaintiff moved "works of art" into the Premises, as this is a characterization of the items in the Premises that is not supported by the evidence cited, or by any evidence in the record. Defendants do not contest the remaining factual statements in paragraph 6.

7. Under the lease, rent for the Premises was set at $50 per month, an amount that remained unchanged for the entire period of the lease.

**RESPONSE**: Defendants contest that "rent for the Premises was set at $50 per month," because this statement is incomplete. Rent also included payment of the utilities for the Premises. (K. Doyle Dep. 64:7-11, 67:18-24.)

8. Under the lease, monthly rent was to be made payable to the Trusts and delivered by hand or mail to the Galena State Bank & Trust in Galena (the "Bank"), where Pamela Doyle works.

**RESPONSE**: Uncontested.

9. Under the lease, Narkiewicz-Laine assumed responsibility for the gas and

electricity he used on the Premises.

**RESPONSE**: Uncontested.

10. The gas bill was paid for the entirety of the lease, but Narkiewicz-Laine disconnected the electricity in or about 2009.

**RESPONSE**: Uncontested.

11. From February 2004 until February 2006, Narkiewicz-Laine paid in monthly checks.

**RESPONSE**: Uncontested.

12. In 2006, Narkiewicz-Laine began to pay several months' rent at once, sometimes in advance and sometimes after the due date.

**RESPONSE**: Uncontested.

13. In July 2008, Narkiewicz-Laine paid for all of the 2008 rent with a single check for $600; this and all previous rent checks were cashed by defendants.

**RESPONSE**: Uncontested.

14. At least one e-mail from Pamela Doyle to Narkiewicz-Laine explicitly ratified large, lump sum payments of rent.

**RESPONSE**: Defendants contest that Pamela Doyle "explicitly ratified large, lump sum payments of rent" because this statement is incomplete. Pamela Doyle never explicitly ratified that any such lump sum payment, or any portion thereof, could be past due or in arrears. (P. Doyle Dep. 38:12-22; 39:10-13.)

15. In September 2009, Narkiewicz-Laine sent a check for $600 via registered mail from Athens, Greece to Janet Bussan at the Bank, as full payment for the rent on the Premises for the 2009 calendar year.

**RESPONSE**: Defendants contest this statement. Plaintiff has not presented sufficient

evidence to support this statement, submitting only a citation to his Amended Complaint and a self-serving affidavit, as well as a document that purports to be a "receipt" for this alleged mailing. However, this receipt does not reflect: (i) the purported contents of the envelope, (ii) the address to whom it was sent, or (iii) any proof of delivery, so it is not the equivalent of "registered mail" as that term is understood in the United States.

16. Although the 2009 check was never cashed, defendants never notified Narkiewicz-Laine that they did not receive this payment.

**RESPONSE**: Uncontested.

17. On or about July 20, 2010, Narkiewicz-Laine deposited a check dated July 19, 2010 for $600 at the Bank, annotating the check "Jan-Dec 2010 Main St. Rent" as full payment for rent on the Premises for the 2010 calendar year.

**RESPONSE**: Uncontested.

18. In or about 2008, Narkiewicz-Laine requested that a broken window be repaired on the Premises and Kevin Doyle fixed it.

**RESPONSE**: Uncontested.

19. Defendants became interested in selling the building and entered the Premises, without notice to Narkiewicz-Laine, to show to prospective buyers.

**RESPONSE**: Uncontested.

20. In the first half of 2010, Kevin Doyle showed the Premises to at least three sets of prospective buyers, all without notice to Narkiewicz-Laine.

**RESPONSE**: Uncontested.

21. In Spring 2010, Michael Doyle viewed the Premises and concluded that it was occupied by a tenant and that the lease for the Premises would be assumed by the purchaser.

**RESPONSE**: Defendants contest this statement. Michael Doyle testified that he saw the

contents in the Premises in early 2010, and that he "didn't give any thought" to what would happen to those contents when the sale was completed. (M. Doyle Dep. 48:24-49:4[1].) He also testified that "as far as the tenancy of the space, I was not paying attention to that." (M. Doyle Dep. 50:1-5.) Finally, Michael Doyle only agreed in principal with the hypothetical question that "if there was an agreement [with the Plaintiff], then the buyer would have to be honoring that." (M. Doyle Dep. 48:15-20.)

22. At no time in 2010 did defendants inform Narkiewicz-Laine that the rent was not up-to-date, that the Building was being sold or that Narkiewicz-Laine should vacate the Premises.

**RESPONSE**: Uncontested.

23. In July 2010, defendants sold the Building to John and Donna Andresen, who had been renting the ground floor of 125 S. Main Street as a store; the closing date was July 23, 2010.

**RESPONSE**: Uncontested.

24. The Andresens told Kevin Doyle that they would only purchase the Building if the Premises were sold without tenants and empty of personal effects.

**RESPONSE**: Uncontested.

25. The offer to purchase, signed by both trustees, states the Building was purchased "as is," without specific reference to Narkiewicz-Laine's lease.

**RESPONSE**: Uncontested.

26. In early July 2010, Kevin Doyle and a relative entered the Premises and removed multiple items belonging to Narkiewicz-Laine.

**RESPONSE**: Uncontested.

---

[1] All of the excerpts of the Deposition of Michael W. Doyle cited by Defendants are all contained within the Plaintiff's submission (dkt. no. 59, Ex. C), so those excerpts are not re-submitted by Defendants.

27. In July 2010, Kevin Doyle rented a large commercial dumpster, which was delivered to the Building.

**RESPONSE**: Uncontested.

28. On July 20, 2010, Kevin and Pamela Doyle, with the assistance of another relative, removed the entire remaining contents of the Premises.

**RESPONSE**: Uncontested.

29. Items in the Premises which Kevin and Pamela Doyle believed they could sell were loaded into Kevin Doyle's pick-up truck, parked behind the Building; all other items were discarded into the dumpster.

**RESPONSE**: Uncontested.

30. The Premises have a back entrance that is not visible from the ground floor of commercial spaces at 123 or 125 S. Main Street.

**RESPONSE**: Uncontested.

31. Defendants transported at least ten loads from the Premises in their pick-up truck to a storage facility owned by Kevin Doyle.

**RESPONSE**: Uncontested.

32. Paintings on plywood, unframed paintings on stretchers, framed and unframed photographs, and "posters" were among the items seen in the Premises and discarded by Kevin and Pamela Doyle from the Premises.

**RESPONSE**: Uncontested.

33. Among the works Kevin Doyle discarded in the dumpster were two large works created by Narkiewicz-Laine, *Father, Son and Holy Ghost* and *The Universe is Burning*.

**RESPONSE**: Uncontested.

34. Among the works Defendants discarded in the dumpster was a photographic work

created by Narkiewicz-Laine entitled *Refugee*.

**RESPONSE**: Uncontested.

35. *Refugee* was later recovered by Narkiewicz-Laine from an individual who claimed he had found the work in a dumpster on Main Street in Galena.

**RESPONSE**: Uncontested.

36. Steve Andresen, Donna Andresen's son, saw canvases in the Premises during a walkthrough and saw them again in the dumpster.

**RESPONSE**: Uncontested.

37. Luanne Gagliardi, who operated a store at 127 S. Main Street, saw large pieces of plywood and stretched canvases about five feet square in the dumpster.

**RESPONSE**: Uncontested.

38. The dumpster was hauled away by Montgomery Trucking and the contents left at the landfill.

**RESPONSE**: Uncontested.

39. On July 21, 2010, Kevin Doyle called the Museum, was given Narkiewicz-Laine's cell phone number, and informed Narkiewicz-Laine that the Building had been sold and all property in the Premises had either been destroyed or removed for sale.

**RESPONSE**: Uncontested.

40. On July 22, 2010, Narkiewicz-Laine's check for 2010 rent was cashed by Pamela Doyle at the Bank.

**RESPONSE**: Uncontested.

41. In 2009 and 2010, Pamela Doyle had an e-mail address for Narkiewicz-Laine which she had used on past occasions to communicate with him.

**RESPONSE**: Uncontested.

41. Defendants knew that Narkiewicz-Laine worked at the Museum.

**RESPONSE**: Uncontested.

43. Defendants did not follow any of the requirements of the Illinois Forcible Entry and Detainer Act: they did not provide Narkiewicz-Laine with notice that they intended to evict him; did not demand final payment of rent due; did not file and serve an eviction complaint or claim for rent with the Circuit Clerk's office in Galena; and did not obtain an order of eviction or judgment for rent.

**RESPONSE**: Defendants contest only the implication that they were required to follow the procedures of the Forcible Entry and Detainer Act, for the reasons set forth in their accompanying Response to Plaintiff's Motion for Partial Summary Judgment. As for the specific facts set forth above, those are uncontested.

### NAMED DEFENDANTS' STATEMENT OF ADDITIONAL FACTS THAT REQUIRE THE DENIAL OF SUMMARY JUDGMENT

Named Defendants, Kevin C. Doyle, Pamela Doyle, the John T. Doyle Trust A, and the John T. Doyle Trust B, in accordance with Local Rule 56.1(3)(C), hereby submit the following additional facts that require the denial of the Motion of Plaintiff, Christian K. Narkiewitz-Laine, for Partial Summary Judgment.

44. As part of the rental obligation, the Plaintiff was required to pay for the utilities that serviced the Premises, natural gas and electricity. (K. Doyle Dep. 64:5-11.) Plaintiff did not have the option of paying for the utilities, he was required to. (K. Doyle Dep. 67:18-68:17.)

45. Plaintiff initially paid the $50.00 consistently each month, then began to pay several months at a time, often in arrears. (P. Doyle 30:17-31:21.) At first, the Doyles did not object to this, but as the Plaintiff fell more into arrears on his payments, Pamela Doyle started to send him emails to demand payment of the past due rent. (P. Doyle Dep. 17:22-18:1;

Defendants' submission Ex. D.)

46. In July of 2007, Pamela Doyle sent Plaintiff an email complaining that the Doyles had not received payment "since February," or for approximately five months. (Defendants' submission Ex. D, p. 1.) Plaintiff responded by paying the past due amount, plus the rent for August, in a lump sum check dated July 13, 2007. (P. Doyle Dep. 34:21-35:16.)

47. On June 26, 2008, Pamela Doyle sent Plaintiff another email, asking for past due payments beginning in January of that calendar year. (Defendants' submission Ex. D, p. 2; P. Doyle Dep. 35:20-36:9.) Plaintiff responded by sending a check for the full year which was dated July 1, 2008. (P. Doyle Dep. 36:19-22, 37:9-21.)

48. In both instances, Plaintiff never communicated further with Pamela or any other Defendant, however, he responded relatively quickly to the demand for payment with an actual payment. In 2007 and 2008 he paid by a check dated within a week of the email demand. (P. Doyle Dep. 35:5-16; 36:19-37:15.)

49. On April 8, 2009, Pamela Doyle again emailed the Plaintiff, stating that they had not received any rent since December of the previous year. (Defendants' submission Ex. D, p. 3; P. Doyle Dep. 38:12-22.)

50. Pamela specifically requested demanded one of two actions from Plaintiff: (a) to "make arrangements" with Pamela as to how Plaintiff would like to pay the rent; or (b) "at a minimum, bring the rent current through April of 2009." (Defendants' submission Ex. D, P. Doyle Dep. 38:17-22.)

51. Plaintiff did not respond to the email demand. He did not make any arrangements as to how he intended to pay the rent, and did not communicate in any fashion with the Doyles for all of 2009. (P. Doyle Dep. 39:14-16.)

52. The Doyles also did not receive any payment in response to the email demand,

and did not receive any payment for the rent for all of 2009. (P. Doyle Dep. 39:17-18.)

53. Plaintiff claims that he did not know that a check he purportedly sent to the Doyles in September of 2009 was not cashed until after his property was removed. (Narkiewicz-Laine Dep. 110:20-24.)

54. However, Plaintiff's bank statement would have revealed to him that this check had not cleared his account. (Narkiewicz-Laine Dep. 112:2-113:8.)

55. In early 2010, Kevin Doyle entered into the Premises in anticipation of selling the building. (K. Doyle 95:2-7, 97:24-98:3.) He found a space that was extremely cold and dark. (K. Doyle 98:11-14.) Neither the lights nor the heat appeared to be on. (K. Doyle 99:1-4.) Pamela Doyle, who accompanied him, confirmed that it was very cold and very dark. (P. Doyle Dep. 46:16-18.)

56. Sometime in 2009, the Plaintiff decided that he no longer wanted to pay for electricity, and so he ceased those payments and the power was disconnected. (Narkiewicz-Laine Dep. 70:7-71:14.) This action on his part was not known to the Doyles, and Plaintiff specifically never advised them of his decision. (Narkiewicz-Laine Dep. 24:23-25:4, 26:10-12, 26:24-27:2.)

57. Although the heating system in the Premises was powered by natural gas, the fan mechanism for the forced-air furnace is powered by electricity. As a result, even if the gas was on, the furnace would not operate absent electrical power, and the space would remain unheated. (Kevin Doyle Declaration, ¶¶3-4.)

58. Kevin and Pamela Doyle found Plaintiff's items to be in disarray, damaged, and, in some cases, completely unusable – such as painting supplies that had hardened. (K. Doyle Dep. 100:22-101:4, 153:6-13, 180:19-181:4; P. Doyle Dep. 46:16-24, 71:7-13.)

59. Pamela Doyle stated that the contents of the Premises were strewn around and haphazardly stored, and, in many cases, "looked [like] trash" to her. (P. Doyle Dep. 46:12-24;

72:4-23.)

60. Independent witnesses who viewed the space during this time described what they saw as "very disarrayed," (Luanne Gagliardi), and that the space contained "a bunch of junk. ….in horrible condition, junk piled all over." (Donna Andresen). (Gagliardi Dep. 14:6-13[2]; Donna Andresen Dep. 11:14-22.)

61. Michael Doyle also viewed the contents in the Premises in early 2010, before the building was sold, and testified that he "never gave it a thought" to what would happen to those contents when the sale was completed. (M. Doyle Dep. 48:15-49:4.)

62. Michael Doyle testified that "I was under the understanding that [Plaintiff] had rented that space; and if there was an agreement, then the buyer would have to be honoring that." (M. Doyle Dep. 48:15-20.)

63. At the time he viewed the space, Michael Doyle did not know about the Plaintiff's long-standing failure to pay rent. (M. Doyle Dep. 34:15-35:2.) He did not take any close notice of the items in the property. (M. Doyle Dep. 42:4-15.) He did not know about, and was not involved in, the removal of the items from the Premises. (M. Doyle Dep. 50:6-19.)

64. Kevin Doyle attempted to contact Plaintiff on two, perhaps three occasions, in 2010 before the property was removed. He called the number he had for Plaintiff, and there was no answer. (K. Doyle Dep. 108:23-110:7.)

65. On one of the attempts to call Plaintiff, Kevin Doyle left a message on the answering machine. (K. Doyle Dep. 113:3-18.) He did not hear back from the Plaintiff. (K. Doyle Dep. 113:24-114:2.)

66. Plaintiff has never sold any artwork. He has never even "considered" selling any of his artwork. (Narkiewicz-Laine Dep. 148:11-24.)

---

[2] All of the excerpts of the Deposition of Luann Gagliardi cited by Defendants are all contained within the Plaintiff's submission (dkt. no. 59, Ex. H), so those excerpts are not re-submitted by Defendants.

67. Plaintiff has spoken to galleries about the possibility of marketing and selling pieces, but "nothing ever came of it." (Narkiewicz-Laine Dep. 149:1-4.)

68. Plaintiff never had any of the items in the Premises appraised. (Narkiewicz-Laine Dep. 103:4-7.)

69. Plaintiff did not obtain any insurance on the property stored in the Premises. (Narkiewicz-Laine Dep. 103:8-19.)

70. Plaintiff is a convicted felon, having pled guilty to obstruction of justice on January 27, 2003, in the United States District Court for the Northern District of Illinois. (Narkiewicz-Laine Dep. 11:9-18; Defendants' submission Ex. F, ¶4.) Moreover, his crime, which he specifically admitted to, was based upon his personal acts of fraud and deception. (Narkiewicz-Laine Dep. 11:9-18; Defendants' submission Ex. F, ¶5.)

Respectfully submitted,

KEVIN C. DOYLE, MICHAEL W. DOYLE, PAMELA DOYLE, JOHN T. DOYLE TRUST A, and JOHN T. DOYLE TRUST B, Defendants

By: /s/ Saskia Nora Bryan
      One of their attorneys

Robert S. Minetz, ARDC No. 1925563
Saskia Nora Bryan, ARDC No. 6255682
LATIMER LeVAY FYOCK LLC
55 West Monroe Street, Suite 1100
Chicago, Illinois 60603
(312) 422-8000

David P. Faulkner
FAULKNER LAW FIRM
6832 Stalter Drive
Rockford, Illinois 61108
(815) 963-8050