UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

---------------------------------------------------- x
CHRISTIAN K. NARKIEWICZ-LAINE,

        Plaintiff,

  - against -

KEVIN C. DOYLE, MICHAEL W. DOYLE, PAMELA DOYLE, JOHN T. DOYLE TRUST A and JOHN T. DOYLE TRUST B, and JOHN DOES 1-5

        Defendants.
---------------------------------------------------- x

NO.:11 CV 1826

THE HONORABLE JUDGE PHILIP G. REINHARD

MAGISTRATE JUDGE P. MICHAEL MAHONEY

### REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Christian K. Narkiewicz-Laine ("Narkiewicz-Laine") hereby submits this Reply Memorandum of Law in further support of his Motion for Partial Summary Judgment.

Defendants make several key admissions in their opposition papers. They admit that they cannot escape summary judgment on liability on plaintiff's claims for relief for conversion and trespass unless they can raise a material issue of fact as to whether plaintiff intended to abandon both the Oral Lease on the Premises and the personal possessions he kept there. Defendants' Opposition Brief ("Opp. Br.") at 10, 17. They admit that the requisite intent must be determined not from subjective belief or protestations of the parties, but based upon objective facts evidencing an affirmative act on the part of plaintiff to abandon his space and possessions. *Id.* at 13.

Although these admissions should frame the analysis, defendants ignore their import by employing the classic strategy of trying to introduce enough factual disputes to defeat the

motion, regardless of relevance or materiality. But factual disputes about the terms of the Oral Lease -- whether plaintiff breached those terms, whether the state of the Premises when defendants entered subjectively led them to believe it had been abandoned, and whether a decade-old conviction on an unrelated matter call plaintiff's credibility into question -- have absolutely nothing to do with the relevant and material objective facts regarding plaintiff's intent (or not) to abandon the Premises.

The key objective facts are *not* in dispute. Namely, plaintiff rented the Premises from defendants[1]; they knew the Premises was in poor condition when they rented it to him and never did anything to fix it up[2]; they knew he did not live there[3]; they knew where he worked while in the U.S., saw him periodically at the bank, and his address was printed on most of his rent checks[4]; they knew his email address and telephone number[5]; they knew he used the Premises to store art and other personal effects[6]; they knew he traveled abroad for business[7]; plaintiff tendered rent for the Premises sporadically which defendants accepted[8]; defendants never claimed plaintiff was in breach of the lease[9]; they decided to sell the building[10]; the buyer demanded defendants deliver the Building vacant in relatively short order[11]; and then, without any advance notice to plaintiff and without instituting eviction proceedings against him, they

---

[1] Plaintiff's Statement of Material Facts ("Pl. Rule 56.1 Statement"), ¶ 5; Declaration of Christian Narkiewicz-Laine ("Narkiewicz-Laine Dec.") ¶ 8; Kevin Doyle Dep. 61-62. The relevant pages from the deposition transcripts are appended to the Declaration of Christopher Robinson ("Robinson Dec."), dated June 29, 2012 and to the Supplemental Declaration of Christopher Robinson ("Supp. Robinson Dec."), dated September 7, 2012, Exhibit B.
[2] Kevin Doyle Dep. 43–44.
[3] Narkiewicz-Laine Dec. ¶ 7; Kevin Doyle Dep. 62–63.
[4] Pamela Doyle Dep. 14, 23; Narkiewicz-Laine Dec. Exs. B, C, D.
[5] Pamela Doyle Dep. 39–40, 52.
[6] Narkiewicz-Laine Dec. ¶ 7; Kevin Doyle Dep. 62–63.
[7] *See, e.g.*, Robinson Dec., Ex. B (email dated 13 July 2007, at Doyle 31).
[8] Pl. Rule 56.1 Statement ¶¶ 12-13; Pamela Doyle Dep. 30-31, 36-40, 93.
[9] Pl. Rule 56.1 Statement ¶ 22; Pamela Doyle Dep. 30-31, 36-40.
[10] Pamela Doyle Dep. 44-46.
[11] Pl. Rule 56.1 Statement ¶ 24; Kevin Doyle Dep. 120; Donna Andresen Dep. 19–20.

2

unceremoniously removed plaintiff's stored possessions from the Premises, discarding some of them as trash, and keeping those they deemed of value for resale.[12]

Those are the undisputed, relevant and material facts on this motion. No amount of after-the-fact conjuring of terms of the Oral Lease allegedly breached by plaintiff could possibly change any of those facts. The unassailable conclusion is that even if plaintiff had breached, defendants failed to act on those breaches in the appropriate way and in a timely manner in favor of self-help. Their belated attempt to justify their illegal and unilateral acts by *post-haec* claims of abandonment cannot defeat this motion.

## ARGUMENT

As defendants concede, "[a] conversion claim cannot be defended by the argument that a defendant was 'reasonably . . . mistaken in thinking the facts to be such as would give him a legal right to the goods.'" Opp. Br. at 13 (citing *Row v. Home Savings Bank*, 306 Mass. 522, 525, 29 N.E.2d 552, 553 (Mass. 1940)). The same can be said of trespass and violation of the Forcible Entry and Detainer Act. *Michael v. First Chicago Corp.*, 139 Ill. App. 3d 375, 382 (Ill. App. 2 Dist. 1985) (abandonment requires proof of "intentional relinquishment"); *Harper Square Housing Corp. v. Hayes*, 305 Ill. App. 3d 955, 963 (Ill. App. 1 Dist. 1999) (burden on landlord to show right to possession under the Act). All of the supposed disputed facts to which defendants point may be relevant to the reasonableness *vel non* of their own *belief* that the Premises had been abandoned by plaintiff at the time they discarded his possessions, but they are not relevant to the *objective* facts and circumstances from which *plaintiff's* intent *vel non* to abandon the Premises and his possessions can be discerned, and it is the latter standard which governs here.

---

[12] Pl. Rule 56.1 Statement ¶¶ 26-34; Kevin Doyle Dep. 127-128, 135-138, 144, 152-153, 158-159; Pamela Doyle Dep. 39-40, 52, 63-74.

3

First, defendants point to plaintiff's historical pattern of late and irregular payment of rent, as somehow evidencing his intent to abandon the Premises. As set forth in plaintiff's moving papers, defendants explicitly ratified this pattern, cashing each and every check when received. Plaintiff's Moving Brief ("Mov. Br.") at 2-3, 15-16. But more to the point, had defendants considered this a breach, they should have put plaintiff on notice, sued him, and followed the statutory procedures to evict him from the Premises and obtain a money judgment for rent due and owing. They did not do so, and since they did not, plaintiff had no way of knowing that they deemed him to be in breach of the Oral Lease because of his payment pattern or that, as a consequence, they thought he had simply abandoned all of the property which he stored in the Premises.

Defendants also say that plaintiff should have been aware that they never received his 2009 calendar year lump-sum rent check because it was never cashed.[13] But since plaintiff had never received any acknowledgment of payment from defendants in the past, their failure to acknowledge payment in 2009 could indicate nothing to him about their belief that he was in breach or that he had abandoned the Premises and/or his possessions. *See, Porter v. Johnson*, 369 So. 2d 1141, 1142 (La App. 1st Cir. 1979) (no abandonment when tenant testified that a rent check had been sent but was lost and valuable materials were left in the rented premises). From plaintiff's perspective – which is the relevant perspective – he paid his rent sporadically in increasingly large amounts because it was more convenient to do so. While periodically he received reminders from Pamela Doyle at the bank to pay his rent, defendants never told him they deemed the lease terminated as a consequence, or that if he did not pay in some other or

---

[13] The translation of the proof of mailing of this check from Greece, appended to Plaintiff's moving papers, included an error. Narkiewicz-Laine Dec. Ex. C. Because of the poor legibility of the copy, the word ΕΞΩΤΕΡΙΚΟΥ which means "International," was improperly read and translated as ΕΣΩΤΕΡΙΚΟΥ: "Domestic." A corrected translation is attached to the Robinson Supp. Dec. Ex. A.

4

different pattern, they would deem that lease terminated and take possession of the Premises, not to mention telling him that they would then take possession of all of the property he stored at the Premises.[14]

Next, defendants strain to cast plaintiff's decision to disconnect the electricity in 2009 as evidence of his intent to abandon the Premises but, once again, if that was a breach of the Oral Lease, they could have put plaintiff on notice, sued him, and followed the statutory procedures for eviction. They did not. If they truly believed that plaintiff had abandoned the Premises in 2009, why not remove his possessions and try to rent the space to someone else at that time? Then in January 2010 – six months before they sold the Building – when defendants claim to have entered the Premises and discovered it "cold" and "dark," they could have put plaintiff on notice of breach of an alleged requirement to maintain utilities, and sued him for eviction under the statute. But they did not. The only fact about the utilities that is relevant to plaintiff's intent is the undisputed fact that he continued to make the gas payments for the Premises in the (apparently mistaken) belief that this was what he needed to do to keep the pipes from freezing.[15] In any event, these allegations go to the reasonableness of defendants' subjective belief with respect to abandonment; they shed no light on plaintiff's intent to abandon. Only now do defendants point to the lack of electricity as evidence of an intent to abandon, notwithstanding the fact that at the time they entered the Premises and disposed of his possessions, they knew

---

[14] Indeed, completely unaware that defendants were in the process of evicting him and destroying many of his possessions, plaintiff tendered his 2010 calendar year rent check in July 2010 when he returned to Galena – a check which defendants cashed. Narkiewicz-Laine Dec. ¶ 24, Ex. D; Pamela Doyle Dep. 93-94.

[15] Defendants make much of the fact that plaintiff effectively disconnected the heat when he requested that the electricity to the Premises be shut off, but they do not challenge his assertion that he never *intended* to shut off the heat; they say only that he was "mistaken in his belief," not that he did not hold that belief. Opp. Br. at 4.

plaintiff used the space primarily for storage, knew that he was frequently abroad, and could have easily ascertained that he was continuing to pay the gas bills on their property.[16]

The third circumstance defendants identify as objective evidence of plaintiff's intent to abandon is that the contents of the Premises were worthless – trash, as they put it – and in disarray when they entered.[17] Of course, if plaintiff was within his rights to store those things in the Premises, then it is irrelevant whether the contents were valuable or not. *Fortech LLC v. R.W. Dunteman Co., Inc.*, 366 Ill. App. 3d 804, 815 (2006) (whether the converted materials were "worthless" does not justify defendants' entry to land and use of materials that the owner could legally store there). But defendants never explain why, if they thought the contents of the Premises were trash, they saved some of it for resale. In fact, the Doyles admit that they carefully separated what they could sell and transported over ten pick-up truck loads of "valuable" material to a storage unit to later sell at auction. As Kevin Doyle described it:

> A: Well, I thought we were saving things of value at that point. . .
>
> Q: So your criteria with looking for things was that they were salable?
>
> A: Yeah. Or something of value, yeah.
>
> Q: And in your mind everything that you took on that day from the space was something of value?
>
> A: Yes.
>
> Q: And how did you determine whether something was valuable or salable?

---

[16] See supra p. 2.
[17] Defendants knew that the Premises had been so trashed by prior tenants, that defendants had deemed it uninhabitable when they rented it to plaintiff in early 2004, and knew that, other than the replacement of a broken window, they had done absolutely no repairs to the Premises or its appliances since then. Kevin Doyle Dep. 43–44, 85-86.

6

> A: I just looked at it and said probably could sell that. We had an upcoming auction of our stuff that we were getting rid of some things. So if that stuff didn't sell or he didn't show up then it was going to be put in the auction.[18]

In addition to the obvious contradiction between defendants' concession of at least some value (ten truckloads at a minimum) on the one hand, and their current characterization of plaintiff's possessions as "trash" on the other, there is ample evidence from defendants and third-party witnesses, not just the plaintiff, that there were multiple paintings and other works of art in the Premises.[19] That evidence, coupled with defendants' explicit acknowledgement of at least some value, is more than sufficient to carry plaintiff's burden on this motion. This is a motion on liability, and the jury will have the opportunity to assess the value of the *totality* of the lost work at trial on damages, but defendants' *post-haec* characterization of plaintiff's possessions does not rise to the level of a material issue of fact.

In the face of the undisputed and material facts in this case, defendants reliance on a seventy-two year old Massachusetts case *Row v. Home Savings Bank*, 306 Mass. 522, 29 N.E.2d 552 (Mass. 1940) is misplaced. That case only serves to illustrate why summary judgment is appropriate in this case.[20] There, the Massachusetts Court affirmed a finding of abandonment in circumstances where: defendant was not plaintiff's landlord, but rather a bank; the bank had foreclosed on the building *after* plaintiff and her landlord had vacated it; plaintiff knew that her lease had been terminated, that her hold-over use of a room in the building was a temporary

---

[18] Kevin Doyle Dep.: 140-141. *See also* Pamela Doyle Dep: 59-60 (on cleaning the many items for auction); Kevin Doyle Dep.: 149 (on separating the valuable items for sale); Pamela Doyle Dep.: 66 (same).
[19] Mov. Brief at 6-8 (citing evidence). For instance, Ioannis Karalias, Vice President of the Chicago Athenaeum, testified that he placed many works of art in the Premises. Declaration of Ioannis Karalias, dated June 28, 2012, ¶¶ 6-13. Defendants have not challenged the veracity of Mr. Karalias' testimony – indeed they ignore it completely in their opposition papers. He also testified that, as he had done on numerous prior occasions, he entered the Premises in late May or June 2010 (only weeks prior to the eviction) with plaintiff's tacit approval using the key kept at the museum and saw nothing amiss. *Id.* at ¶ 15.
[20] *Row* is cited in *Fortech*, 366 Ill. App.3d at 816, but hardly "with approval" as defendants claim. The Court in *Fortech* found the relevance of *Row* to the case before it "unpersuasive."

7

courtesy for the summer only; yet she failed to remove her two trunks and one suitcase a full year later, despite notice from the landlord that he was turning off the water service, abandoning the building, and she should remove all her property immediately. At the time it foreclosed, the bank "did not know to whom the property belonged, and consequently could not deliver it to the plaintiff." The Court imposed a duty of "reasonable conduct" on the bank in trying to search for the owner, and in light of the "apparent worthlessness" of what she left in her room, held that it had done enough to satisfy that duty.

Here, in contrast to *Row*, these are the undisputed facts: defendants were the landlord; they well knew who their tenant was and how to reach him – they knew where he worked, his telephone number, his email address, where he banked, and where in Galena he resided; plaintiff had not vacated the Premises; and the only effort defendants even claim to have made to give him advance notice of their intent was a single voicemail message, left at his place of business (not his home), which did not advise him that the Building was being sold, his lease was being terminated, or that he should remove the truckloads full of items defendants saved for re-sale from the six-room Premises.[21] Those facts are a far cry from those in *Row*, indeed.

In a final, last ditch attempt to create a material issue of fact where none exists, defendants question plaintiff's credibility based on a decade old conviction. But plaintiff's credibility has nothing whatever to do with this motion which turns on the *objective* facts evidencing his intent. The unassailable truth is that, as defendants concede (Opp. Br. at 7), had they followed the procedures in the Forcible Detainer and Entry Act, they would not be in their current position. But they dropped the ball by failing to take appropriate legal action and have

---

[21] Kevin Doyle Dep. 110-113.

8

been scrambling ever since to find an excuse for ignoring their legal duty to their tenant. The facts are that they have no excuse and they have no defense to this motion.

## CONCLUSION

Defendants have failed to raise a material issue of fact as to whether Narkiewicz-Laine exhibited "a conscious purpose and intention . . . neither to use nor to retake the property into his or her possession," evidenced by "a clear and unmistakable affirmative act indicating a purpose to repudiate the interest in the leasehold." 84 A.L.R. 4th 183. For the reasons set forth above and in plaintiff's initial moving memorandum of law, supporting declarations, and Rule 56.1 Statement of Undisputed Facts, plaintiff is entitled to judgment as a matter of law. Accordingly, Narkiewicz-Laine respectfully requests that the Court grant his motion and enter partial summary judgment for plaintiff.

Dated: New York, New York
      September 7, 2012

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:/s/Christopher Robinson
   Christopher J. Robinson
1633 Broadway 27th floor
New York, New York 10019
(212) 489-8230
*Primary and Trial Counsel for Plaintiff*

James H. Wolf
James M. Wolf
WOLF & TENNANT
33 North Dearborn, suite 800
Chicago, Illinois 60602
(312) 739-0300.

*Local Counsel for Plaintiff*

9