**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| CHRISTIAN K. NARKIEWICZ-LAINE,<br><br>Plaintiff,<br><br>- against -<br><br>KEVIN C. DOYLE, MICHAEL W. DOYLE, PAMELA DOYLE, JOHN T. DOYLE TRUST A and JOHN T. DOYLE TRUST B, and JOHN DOES 1-5<br><br>Defendants. | NO.:11 CV 1826<br><br>THE HONORABLE JUDGE PHILIP G. REINHARD<br><br>MAGISTRATE JUDGE P. MICHAEL MAHONEY |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedures and Rule 56.1 of the Local Civil Rules of the United States District Court for the Northern District of Illinois, Plaintiff Christian K. Narkiewicz-Laine ("Narkiewicz-Laine") hereby submits the following Responses to Defendant's Statement of Additional Undisputed Facts.

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 44. As part of the rental obligation, the Plaintiff was required to pay for the utilities that serviced the Premises, natural gas and electricity. (K. Doyle Dep. 64:5-11.) Plaintiff did not have the option of paying for the utilities, he was required to. (K. Doyle Dep. 67:18-68:17.) | Disputed. Plaintiff was told he was responsible for the utilities, by which he understood that he was to put them in his name and pay the gas and electricity bills as generated. He was never told he was <u>required</u> to keep electricity service in the storage space even if he no longer needed it. (Narkiewicz-Laine Declaration ¶ 9) |
| 45. Plaintiff initially paid the $50.00 consistently each month, then began to pay several months at a | Disputed. Pamela Doyle sent only three emails (in July 2007, June 2008, and April 2009), none of which "demanded" payment and one of which was |

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
| --- | --- |
| time, often in arrears. (P. Doyle 30:17-31:21.) At first, the Doyles did not object to this, but as the Plaintiff fell more into arrears on his payments, Pamela Doyle started to send him emails to demand payment of the past due rent. (P. Doyle Dep. 17:22-18:1; Defendants' submission Ex. D.) | characterized as "a friendly reminder.," Plaintiff refers to the three emails for a complete recitation of the contents thereof. (Defendants' submission Ex. D.) |
| 46. In July of 2007, Pamela Doyle sent Plaintiff an email complaining that the Doyles had not received payment "since February," or for approximately five months. (Defendants' submission Ex. D, p. 1.) Plaintiff responded by paying the past due amount, plus the rent for August, in a lump sum check dated July 13, 2007. (P. Doyle Dep. 34:21-35:16.) | Undisputed. Plaintiff also sent a check for $200 on September 7, 2007 in payment of rent for the balance of 2007, unrelated to any email from Defendants. (Second Amended Complaint ¶ 25) |
| 47. On June 26, 2008, Pamela Doyle sent Plaintiff another email, asking for past due payments beginning in January of that calendar year. (Defendants' submission Ex. D, p. 2; P. Doyle Dep. 35:20-36:9.) Plaintiff responded by sending a check for the full year which was dated July 1, 2008. (P. Doyle Dep. 36:19-22, 37:9-21.) | Undisputed. |
| 48. In both instances, Plaintiff never communicated further with Pamela or any other Defendant, however, he responded relatively quickly to the demand for payment with an actual payment. In 2007 and 2008 he paid by a check dated within a week of the email demand. (P. Doyle Dep. 35:5-16; 36:19-37:15.) | Undisputed. |

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| 49. On April 8, 2009, Pamela Doyle again emailed the Plaintiff, stating that they had not received any rent since December of the previous year. (Defendants' submission Ex. D, p. 3; P. Doyle Dep. 38:12-22.) | Undisputed. |
| 50. Pamela specifically requested demanded [sic] one of two actions from Plaintiff: (a) to "make arrangements" with Pamela as to how Plaintiff would like to pay the rent; or (b) "at a minimum, bring the rent current through April of 2009." (Defendants' submission Ex. D, P. Doyle Dep. 38:17-22.) | Undisputed that the April 8, 2009 email requested (not demanded) that Plaintiff make arrangements with Pamela at the bank as to how he would like to pay his rent or at a minimum bring the rent current through April of 2009. The email also acknowledged that "in the past it was more convenient to write one lump sum payment" for the rent. (Defendants' submission Ex. D) |
| 51. Plaintiff did not respond to the email demand. He did not make any arrangements as to how he intended to pay the rent, and did not communicate in any fashion with the Doyles for all of 2009. (P. Doyle Dep. 39:14-16.) | Disputed. Although Plaintiff did not communicate directly with the Doyles (he had not done so with respect to any of his prior rent payments and communicated with them only once in the six years of his lease to request that a broken window be repaired), Plaintiff sent a check for $600 via registered mail to Janet Bussan, a bookkeeper at the Galena State Bank and Trust, in payment for calendar year 2009 rent. (Narkiewicz-Laine Dec. ¶¶ 13, 18) |
| 52. The Doyles also did not receive any payment in response to the email demand, and did not receive any payment for the rent for all of 2009. (P. Doyle Dep. 39:17-18.) | Plaintiff lacks knowledge or information as to whether the Doyles "received" payment for rent for 2009, but states that he sent a check for $600 for 2009 rent on September 8, 2009 which was not cashed by the Doyles. (Narkiewicz-Laine Dec. ¶ 18) |
| 53. Plaintiff claims that he did not know that a check he purportedly sent to the Doyles in September of 2009 was not cashed until after his property was removed. (Narkiewicz-Laine Dep. 110:20-24.) | Undisputed. |
| 54. However, Plaintiff's bank statement would have revealed to him that this check had not cleared his account. (Narkiewicz-Laine | Undisputed, except that Plaintiff states that he does not remember if he carefully examined his bank statements when he finally collected his mail after being abroad for several months and certainly |

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| Dep. 112:2-113:8.) | did not know until after he was evicted that the check had not cleared his account. (Narkiewicz-Laine Dep. 112:2-113:8.) |
| 55. In early 2010, Kevin Doyle entered into the Premises in anticipation of selling the building. (K. Doyle 95:2-7, 97:24-98:3.) He found a space that was extremely cold and dark. (K. Doyle 98:11-14.) Neither the lights nor the heat appeared to be on. (K. Doyle 99:1-4.) Pamela Doyle, who accompanied him, confirmed that it was very cold and very dark. (P. Doyle Dep. 46:16-18.) | Disputed. Kevin and Pamela Doyle only testified that when they entered the space on a winter's evening in January 2010, they found the space "cold and dark" (not "extremely" or "very") (K. Doyle 98:11-14; P. Doyle Dep. 46:16-18.), and Kevin Doyle did not testify that the heat did not appear to be on, only that the lights did not work. (K. Doyle 99:1-4) |
| 56. Sometime in 2009, the Plaintiff decided that he no longer wanted to pay for electricity, and so he ceased those payments and the power was disconnected. (Narkiewicz-Laine Dep. 70:7-71:14.) This action on his part was not known to the Doyles, and Plaintiff specifically never advised them of his decision. (Narkiewicz-Laine Dep. 24:23-25:4, 26:10-12, 26:24-27:2.) | Disputed. Plaintiff *requested* that the electricity be disconnected (rather than it being disconnected because of non-payment as the statement implies) and Plaintiff denies that he was required under the lease to so inform the Doyles. (Narkiewicz-Laine Dec. ¶ 14) |
| 57. Although the heating system in the Premises was powered by natural gas, the fan mechanism for the forced-air furnace is powered by electricity. As a result, even if the gas was on, the furnace would not operate absent electrical power, and the space would remain unheated. (Kevin Doyle Declaration, ¶¶3-4.) | Plaintiff lacks knowledge sufficient to assess the truth of this statement. |
| 58. Kevin and Pamela Doyle found Plaintiff's items to be in disarray, damaged, and, in some cases, completely unusable – such as painting supplies that had | Undisputed that Kevin and Pamela Doyle testified to this effect, but disputes that Defendants were qualified to assess whether Plaintiff's artwork and art supplies in the space were "damaged" or "unusable." |

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| hardened. (K. Doyle Dep. 100:22-101:4, 153:6-13, 180:19-181:4; P. Doyle Dep. 46:16-24, 71:7-13.) | |
| 59. Pamela Doyle stated that the contents of the Premises were strewn around and haphazardly stored, and, in many cases, "looked [like] trash" to her. (P. Doyle Dep. 46:12-24; 72:4-23.) | Undisputed. |
| 60. Independent witnesses who viewed the space during this time described what they saw as "very disarrayed," (Luanne Gagliardi), and that the space contained "a bunch of junk. ….in horrible condition, junk piled all over." (Donna Andersen). (Gagliardi Dep. 14:6-13; Donna Andersen Dep. 11:14-22.) | Undisputed that Luanne Gagliardi and Donna Andresen so testified in part, although neither witness was in the space for long and both witnesses noted that there were paintings in the space. (Gagliardi Dep. 22:20-24:2; Donna Andresen Dep. 13:10-20). In addition independent witness Ioannis Karalias stated that there were many works of art stored in the Premises, much of it in packaging and hence not immediately apparent. Ioannis Karalias Declaration, ¶¶ 6-15. |
| 61. Michael Doyle also viewed the contents in the Premises in early 2010, before the building was sold, and testified that he "never gave it a thought" to what would happen to those contents when the sale was completed. (M. Doyle Dep. 48:15-49:4.) | Undisputed. Michael Doyle did not give a thought to what would happen to the contents because he assumed that the owner of the contents would remain a tenant in the space when the building was sold. (M. Doyle Dep. 48:15-49:6; 50:6-51:12) |
| 62. Michael Doyle testified that "I was under the understanding that [Plaintiff] had rented that space; and if there was an agreement, then the buyer would have to be honoring that." (M. Doyle Dep. 48:15-20.) | Undisputed. |
| 63. At the time he viewed the space, Michael Doyle did not know about the Plaintiff's long-standing failure to pay rent. (M. Doyle Dep. 34:15-35:2.) He did not take any close notice of the items in the property. (M. Doyle Dep. 42:4-15.) He did | Undisputed, except that in his brief visit to the space, Michael Doyle did notice "several paintings" and that "some of the larger ones" were leaning against a wall. (M. Doyle Dep. 42:18-43:4) |

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| not know about, and was not involved in, the removal of the items from the Premises. (M. Doyle Dep. 50:6-19.) | |
| 64. Kevin Doyle attempted to contact Plaintiff on two, perhaps three occasions, in 2010 before the property was removed. He called the number he had for Plaintiff, and there was no answer. (K. Doyle Dep. 108:23-110:7.) | Disputed. Plaintiff testified that he called the Museum number two or three times and reached the Museum voice message machine each time but chose to leave a message only once. (K. Doyle Dep. 111:13-113:5) |
| 65. On one of the attempts to call Plaintiff, Kevin Doyle left a message on the answering machine. (K. Doyle Dep. 113:3-18.) He did not hear back from the Plaintiff. (K. Doyle Dep. 113:24-114:2.) | Disputed. Plaintiff denies receiving any message from Kevin Doyle left on the Museum's answering machine. (Narkiewicz-Laine Dec. ¶ 22) |
| 66. Plaintiff has never sold any artwork. He has never even "considered" selling any of his artwork. (Narkiewicz-Laine Dep. 148:11-24.) | Immaterial and disputed. This statement is inconsistent with statement number 67. |
| 67. Plaintiff has spoken to galleries about the possibility of marketing and selling pieces, but "nothing ever came of it." (Narkiewicz-Laine Dep. 149:1-4.) | Immaterial and disputed. This statement is inconsistent with statement number 66. |
| 68. Plaintiff never had any of the items in the Premises appraised. (Narkiewicz-Laine Dep. 103:4-7.) | Undisputed but immaterial to the motion. |
| 69. Plaintiff did not obtain any insurance on the property stored in the Premises. (Narkiewicz-Laine Dep. 103:8-19.) | Undisputed but immaterial to the motion. |
| 70. Plaintiff is a convicted felon, having pled guilty to obstruction of justice on January 27, 2003, in the United States District Court for the Northern District of Illinois. (Narkiewicz-Laine Dep. 11:9-18; | Disputed. Although Plaintiff does not deny these facts, Plaintiff strongly denies that they are material to the present motion for partial summary judgment which does not require the court to weigh the relative credibility of the witness's testimony and does not require the court to assess |

| DEFENDANTS' UNDISPUTED FACTS | PLAINTIFF'S RESPONSE |
|---|---|
| Defendants' submission Ex. F, ¶4.) Moreover, his crime, which he specifically admitted to, was based upon his personal acts of fraud and deception. (Narkiewicz-Laine Dep. 11:9-18; Defendants' submission Ex. F, ¶5.) | Plaintiff's art career nor the value and quantity of artwork in the Premises. |

Dated: New York, New York
September 7, 2012

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:/s/ Christopher Robinson
Christopher J. Robinson
Marcia B. Paul
1633 Broadway 27th floor
New York, New York 10019
(212) 489-8230
*Primary and Trial Counsel for Plaintiff*

James H. Wolf
James M. Wolf
WOLF & TENNANT
33 North Dearborn, suite 800
Chicago, Illinois 60602
(312) 739-0300.

*Local Counsel for Plaintiff*