**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Christian K. Narkiewicz-Laine, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 11 C 1826 |
| | ) | |
| Kevin C. Doyle, et al., | ) | |
| | ) | |
| *Defendants.* | ) | Judge Frederick J. Kapala |

**<u>ORDER</u>**

Plaintiff's motion for new trial, for judgment notwithstanding the verdict, and to alter judgment [286] is denied. Defendants' motion for attorney fees and expenses [283] is denied.

**<u>STATEMENT</u>**

Currently before the court are several post-trial matters. Plaintiff has filed a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative a motion for new trial pursuant to Rule 59(a), arguing that the jury's verdict—which resulted in a judgment in favor of plaintiff—was against the manifest weight of the evidence. Plaintiff also moves to amend the judgment pursuant to Rule 59(e) in order to add prejudgment interest. Finally, the parties have submitted briefing on the issue of attorney's fees in which both parties claim to be the prevailing party entitled to a fee award. As explained below, each of these requests is denied and the court's judgment will stand, with each party to bear their own costs.

**I. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Rule 50(a) allows the court to grant a motion for judgment as a matter of law against a party if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on a particular issue. Fed. R. Civ. P. 50(a). During the trial, plaintiff filed a motion under Rule 50(a) seeking a judgment as a matter of law in his favor on his claim under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A, raised in Count I of the second amended complaint.[1] The court denied the motion, noting that there was sufficient expert testimony presented by defendants for the jury to find that there were no works of recognized stature located in the storage unit at the time plaintiff's items were discarded.

Pursuant to Rule 50(b), plaintiff has now filed a renewed motion for judgment as a matter of law on Count I, in which he contests the amount of damages he received on that count. The jury

---

[1]Plaintiff also sought a judgment as a matter of law on defendant's affirmative defense of abandonment, but that is no longer at issue in this case given the jury's verdict on the state-law claims.

found that only four works of recognized stature were destroyed by defendants and awarded plaintiff a total of $120,000 in statutory damages. In his motion, plaintiff asserts that "no reasonable jury could find that Defendants destroyed only four VARA-qualified works," and that the evidence presented at trial established that defendants "destroyed far more than four" of plaintiff's "VARA-qualified works."

Under Rule 50(b), the court considers "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." E.E.O.C. v. Mgmt. Hosp. of Racine, Inc., 666 F.3d 422, 431 (7th Cir. 2012). The court is "obliged to leave the judgment undisturbed unless the moving party can show that no rational jury could have brought in a verdict against him." Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 926 (7th Cir. 2004). Moreover, the court "must accord substantial deference to a jury's determination of compensatory damages." Ramsey v. Am. Air Filter Co., 772 F.2d 1303, 1313 (7th Cir. 1985).

At trial, plaintiff attempted to show through the testimony of his expert witnesses that all 1,457 works of art listed in Plaintiff's Exhibit #36 and depicted in Plaintiff's Exhibit #52 should be considered works of recognized stature entitled to protection under VARA. But the fact that plaintiff may have presented evidence to support his claim does not mean that the jury was required to accept that evidence in its entirety. For example, the jury could have rationally determined that it was impossible to declare a work to be of recognized stature when there was no photograph of the original work available for plaintiff's experts to view or evaluate. Nearly half of the claimed VARA works in Plaintiff's Exhibit #36 do not have a corresponding image depicted in Plaintiff's Exhibit #52.[2] At a minimum, the jury may have disregarded those works of art when determining which works qualified as having recognized stature. In addition, the jury could have simply disagreed with plaintiff's experts on any of the other works that were included in the list, especially considering that their testimony on this issue was general and did not address specific details about each claimed work of recognized stature. See Walker v. Sheahan, 526 F.3d 973, 979 (7th Cir. 2008) ("[A] reasonable jury could disagree with [one party's] expert and accept [the other party's] version of the events."). For example, the jury may have determined that plaintiff's photographs of various buildings and structures, which comprised a large portion of the claimed works of recognized stature, did not rise to the level of recognized stature. Such a finding would have been consistent with, and supported by, the testimony of defendants' expert witnesses who opined that none of plaintiff's works of art were of recognized stature. The jury also could have rationally rejected the idea that every single work of art created by plaintiff met the standard of recognized stature considering that he had never sold any of his artwork. Finally, and perhaps most importantly, the jury was not required to simply accept plaintiff's testimony that all of the works listed in Plaintiff's Exhibit #36 were present at the time that defendants cleaned out the storage unit. A rational jury certainly could have concluded that it was unlikely plaintiff stored nearly 1,500 works of recognized stature in a storage unit with no electricity, no working climate control system, and no written inventory or

---

[2]Plaintiff's Exhibit #36 lists a total of 255 works of art, but 109 of those works include only a "No Photograph Available" image in Plaintiff's Exhibit #52. When all of the duplicate prints are included, the total count becomes 1,457 works, with 640 of those works without any visual depiction.

2

insurance coverage for the works, especially given the testimony of defendants and others concerning the dirty condition of the storage unit at the time it was emptied.

Ultimately, plaintiff claims in his renewed motion for judgment as a matter of law that the jury was required to accept the blanket conclusions offered by his experts that every work of art listed in Plaintiff's Exhibit #36 qualified as a work of recognized stature, but that is simply not the case. The evidence presented, and the inferences that can be drawn therefrom, was sufficient to support the jury's verdict that only four works of recognized stature were intentionally destroyed by defendants. Under these circumstances, the court is required to leave the judgment undisturbed, and plaintiff's Rule 50(b) motion is denied.

## II. MOTION FOR NEW TRIAL

Plaintiff's alternative request for a new trial fails for similar reasons. Under Rule 59(a), "[a] court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." Willis v. Lepine, 687 F.3d 826, 836 (7th Cir. 2012). A motion for new trial under Rule 59(a) claiming insufficient damages will be denied and the court "will uphold a jury's verdict as long as there is a reasonable basis in the record to support it." Frizzell v. Szabo, 647 F.3d 698, 702 (7th Cir. 2011). The court reviews "the damages evidence in the light most favorable to the jury's verdict, and the verdict must stand unless there is no rational connection between the evidence and the jury's award." McNabola v. Chi. Transit Auth., 10 F.3d 501, 516 (7th Cir. 1993).

As noted above, the jury was not required to accept plaintiff's evidence and could have rationally concluded that there were only four works of recognized stature that were destroyed by defendants. Indeed, a review of the testimony of Kevin and Pamela Doyle, the two primary defendants in this case, provides sufficient support for the jury's verdict. At trial, Kevin Doyle identified only two paintings that he had seen at the storage unit and that were thrown into the dumpster: "Father, Son, and Holy Ghost, 2002" and "The Universe is Burning, 2002."[3] Pamela Doyle's testimony is not as precise when viewed through the trial transcript, although she did testify about one exhibit that was shown to her, but never identified by name, as a "piece of artistic material" that she had seen in the storage unit and had thrown into the dumpster. She also recalled seeing "some posters with words written on them sort of like this exhibit," which she later identified on cross-examination as the "Refugee" poster.[4] Given this testimony, the jury could have determined, without resorting to a compromise verdict as plaintiff suggests, that there were only four works of recognized stature in the storage unit that were intentionally destroyed by defendants. Accordingly, the court cannot say that the jury's verdict was against the manifest weight of the

---

[3]The court notes that there are two works of art titled "The Universe is Burning, 2002," which are listed in Plaintiff's Exhibit 36 as #285 and #290. Kevin Doyle appears to be discussing #290, which was a painting on plywood, whereas plaintiff described #285 during his testimony as "one of [his] most important exhibitions" because it was the "high moment of [his] career as a landscape painter." It is possible the jury determined that both of these paintings were destroyed.

[4]Pamela Doyle also acknowledged that "there were some things rolled up in tubes" that were discarded, but she did not know whether those tubes contained any paintings.

3

evidence or order a new trial on this basis.

In his motion for new trial, plaintiff also argues that he was severely prejudiced by various evidentiary errors during the trial. As an initial matter, it is difficult to say that plaintiff suffered any prejudice as a result of this court's evidentiary rulings given that the jury returned a verdict in his favor on all counts. Plaintiff has identified certain evidentiary rulings that he believes were adverse to his position and potentially prejudicial, but he has not explained how that prejudice materialized. Indeed, the only thing plaintiff could complain about is the amount of damages that were awarded to him, but there is no argument in his motion linking any of the alleged evidentiary errors to the jury's determination of damages. Accordingly, the court could deny the motion for new trial on this basis alone.

In any event, the court has reviewed the claimed evidentiary errors and finds no basis to order a new trial in this matter. Plaintiff first argues that the court erred in allowing testimony concerning plaintiff's conviction that was over ten years old. This issue was thoroughly analyzed by the court in response to plaintiff's motion in limine #1, as well as his motion to reconsider that initial ruling, and the court stands by its determination that plaintiff's 2003 conviction was admissible under Rule 609. The jury was entitled to consider this evidence for purposes of impeachment and nothing that unfolded during the trial alters this conclusion.

Next, plaintiff alleges that the cumulative effect of several other evidentiary errors was prejudicial. In order to prevail on a "cumulative effect" argument, plaintiff must show: "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered [the] trial fundamentally unfair." Christmas v. City of Chicago, 682 F.3d 632, 643 (7th Cir. 2012). Plaintiff is unable to meet this burden. In his motion, plaintiff asserts, without much argument or any citation to legal authority, that the court erred by (1) allowing evidence of plaintiff's wealth, (2) allowing evidence concerning the Pulitzer Prize Committee, (3) precluding plaintiff from testifying about certain insurance valuation documents, and (4) allowing defendants to present evidence of postcards of various Chicago landmarks. After consideration, the court stands by its rulings and finds no error with regard to any of these issues. The evidence concerning plaintiff's wealth was minimal but was nevertheless relevant to the issue of whether plaintiff could have procured insurance for his works of art that were allegedly destroyed by defendants. The issue concerning the Pulitzer Prize Committee was also a minor one, but it was fair for defendants to clarify the scope of that alleged accolade as it may have been relevant to whether plaintiff's works of art should be considered to have recognized stature. As for the insurance valuations, this issue was addressed before trial within the context of defendants' motion in limine #1, and the court continues to believe that the value plaintiff placed on his own works of art that were exhibited or donated after the destruction of plaintiff's property was not relevant and would have been an improper subject for plaintiff to testify about since he was not qualified as an expert in the field of art appraisal. Finally, the court finds no error in allowing defendants to present evidence of commercially-available postcards to compare and contrast to certain photographs that plaintiff claimed should be considered works of recognized stature. Accordingly, the court finds no error in any of the issues identified by plaintiff in his motion for new trial. Moreover, even if one or more of the court's evidentiary rulings could be considered erroneous, there is nothing to credibly suggest that these errors were so severe, either individually or cumulatively, that the trial became

fundamentally unfair as a result.

Finally, without presenting any new argument on the subject, plaintiff asserts that the court erred in reducing the damages that were awarded by the jury. This undeveloped argument, in which plaintiff essentially asks the court to reconsider its ruling on the proper amount of damages, is insufficient and provides no basis for a new trial.

For all these reasons, plaintiff's motion for new trial is denied.

### III.  MOTION TO ALTER OR AMEND JUDGMENT

In his motion, plaintiff also asks the court to amend the judgment to include an award of prejudgment interest. "[A] motion for prejudgment interest filed after entry of a final judgment is a motion to alter or amend the judgment under Rule 59(e)." McNabola, 10 F.3d at 520. "Rule 59(e) motions may not be used to make arguments that could and should have been made before the district court rendered a judgment." Miller v. Safeco Ins. Co. of Am., 683 F.3d 805, 815 (7th Cir. 2012). Here, because plaintiff never raised the issue of prejudgment interest in the final pretrial order, either in his statement of damages or his trial brief, the court declines to consider the issue. See First State Bank of Monticello v. Ohio Cas. Ins. Co., 555 F.3d 564, 572 (7th Cir. 2009) ("The district court was entitled to conclude that raising the issue of prejudgment interest for the first time in a Rule 59(e) motion, after summary judgment was entered, was too late."); Thorne v. Member Select Ins. Co., No. 2:09-CV-87-JEM, 2017 WL 1089211, at *3 (N.D. Ind. Mar. 22, 2017) (declining to address the merits of the plaintiff's request for prejudgment interest in a Rule 59(e) motion, even though it was "mentioned" in his complaint).

Even if the court considers the issue, however, there is no basis for an award of prejudgment interest in this case. Turning first to plaintiff's VARA claim, it is undisputed that the statute does not provide, one way or the other, for an award of prejudgment interest for this type of claim. Plaintiff instead relies on a general rule that "prejudgment interest should be presumptively available to victims of federal law violations." Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989). This presumption, however, does not mean that an award of prejudgment interest is required in every case.

In this case, plaintiff elected an award of statutory damages on his VARA claim. The Seventh Circuit has concluded, albeit under a different statute, that when a plaintiff has been "awarded statutory damages, prejudgment interest would be inappropriate." Matter of Marshall, 970 F.2d 383, 386 (7th Cir. 1992). Although plaintiff cites some authority from outside this circuit suggesting that a district court can, in its discretion, still award prejudgment interest under the Copyright Act for statutory damage awards, see, e.g., Barclays Capital Inc. v. Theflyonthewall.com, 700 F. Supp. 2d 310, 329 (S.D.N.Y. 2010), rev'd in part, 650 F.3d 876 (2d Cir. 2011), this court is required to follow the Seventh Circuit precedent unless and until it has been overturned.

In any event, even if the court could award prejudgment interest on the statutory damages, the court does not believe that it would be appropriate in this case. As reflected in the verdict form, the jury specifically found that defendants did not willfully violate plaintiff's rights under VARA, and there is no indication whatsoever that defendants intentionally delayed the trial or otherwise sought to increase the harm to plaintiff. Moreover, under the unique facts of this case, the

destruction of plaintiff's artwork did not deprive plaintiff of any actual money, since he did not sell his artwork, and therefore an award of prejudgment interest is not necessary to fully compensate plaintiff for his loss or otherwise ensure that plaintiff is not deprived of the time-value of money. For all these reasons, even if prejudgment interest is available on the statutory damages award for plaintiff's VARA claim, the court would in its discretion decline to include this amount in the judgment, as it would result in a windfall for plaintiff.

As for plaintiff's state-law claims, there is even less basis for an award of prejudgment interest. In his motion, plaintiff relies on Section 2 of the Illinois Interest Act, 815 ILCS 205/2, but the Seventh Circuit has held that "the Illinois Interest Act does not provide for pre-judgment interest in tort cases," Westchester Fire Ins. Co. v. Gen. Star Indem. Co., 183 F.3d 578, 585 (7th Cir. 1999), and plaintiff's attempt to establish otherwise is not persuasive. In any event, even if that statute did authorize an award of prejudgment interest in this case, it would only apply if plaintiff could establish an "unreasonable and vexatious delay of payment," which he has not done. 815 ILCS 205/2; see also Telemark Dev. Grp., Inc. v. Mengelt, 313 F.3d 972, 986 (7th Cir. 2002) ("[A]n honest dispute as to the existence of a legal obligation will not result in an unreasonable and vexatious delay which would permit recovery of interest."). Here, plaintiff took an unfortunate landlord-tenant dispute and morphed it into a demand for more than $11 million in damages from defendants. Under these circumstances, defendants cannot be faulted for defending themselves against plaintiff's claims. Accordingly, the court also declines to award prejudgment interest on plaintiff's state-law claims.

For all these reasons, plaintiff's motion to alter or amend judgment to include prejudgment interest is denied.

### IV. MOTION FOR ATTORNEY'S FEES

As a final matter, both parties have filed a position paper on the issue of attorney's fees and costs with respect to the VARA claim advanced in Count I of plaintiff's second amended complaint. The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Given this language, the Supreme Court has explained that "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994); see also Riviera Distribs., Inc. v. Jones, 517 F.3d 926, 928 (7th Cir. 2008) (concluding that "§ 505 treats both sides equally and allows an award in either direction").

In their position papers, both sides argue that they should be considered the prevailing party entitled to attorney's fees and costs. At first blush, this appears to be a simple issue as plaintiff received a judgment in his favor and will be entitled to collect a total of $300,000 in damages from defendants. The Supreme Court has explained that the term "prevailing party" is a "legal term of art" which requires "a court-ordered change in the legal relationship between the plaintiff and the defendant," such as an enforceable judgment on the merits. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001); see also Riviera, 517 F.3d at 928 ("[A] litigant prevails (for the purpose of fee-shifting statutes) when it obtains a material alteration of the legal relationship of the parties."). The analysis in this case, however, is not so simple.

6

As defendants correctly point out in their filings, plaintiff's VARA "claim" in Count I was actually numerous claims joined into one count. Plaintiff sought to recover for the destruction of 1,457 alleged works of recognized stature, and he prevailed, but only as to four of those works of art. Defendants, on the other hand, successfully defended against plaintiff's claims with respect to the other 1,453 works. If these unique claims had each been brought in a separate count of plaintiff's complaint, then there would have been a judgment in favor of defendants on the vast majority of plaintiff's VARA claims. The fact that plaintiff chose to plead all of his VARA claims in one count should not dictate who is determined to be the prevailing party for purposes of awarding costs under § 505. The court also notes that, unlike in the context of civil rights cases where the plaintiff is treated more favorably than the defendant and need not prevail on every single claim to be considered the prevailing party, the parties in a copyright action are supposed to be treated equally for purposes of § 505. See Fogerty, 510 U.S. at 534. When determining who is the prevailing party under that provision, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." Id.

The reality of this case is that both parties prevailed in some significant aspects, and both parties lost in some significant aspects, such that it is difficult to declare one clear winner.[5] Plaintiff prevailed by receiving a judgment in his favor, whereas defendants prevailed by successfully defending against most of plaintiff's VARA claims and the enormous amount of damages he sought. Under these circumstances, the court has determined, in its discretion, that there is no prevailing party entitled to attorney's fees and costs under § 505.[6] Accordingly, defendant's motion for attorney's fees and expenses, as well as plaintiff's request for the same, are both denied, and each party will bear their own costs.

Date: 6/14/2018                                    ENTER:

                                                   _____
                                                   FREDERICK J. KAPALA

                                                   District Judge

---

[5]Plaintiff's apparent dissatisfaction with the judgment, as reflected above in his various requests for post-judgment relief, shows that even he does not believe he prevailed on all aspects of his case. Although this is certainly not dispositive of the issue, it is telling.

[6]In the event that the court had to declare only one party as the prevailing party in this case, it is not clear who that would be, but that is irrelevant. No matter which party would be considered the prevailing party under those circumstances, the court still would exercise its discretion under § 505 and decline to award that party attorney's fees and costs. Put another way, even if the court had declared plaintiff as the prevailing party, that still would not have changed the outcome of the fee request under the circumstances of this case.